**H. K. PORTER COMPANY, INC.,**
**Plaintiff-Appellant,**

v.

**NATIONAL FRICTION PRODUCTS**
**CORP. and Earl E. Figert,**
**Defendants-Appellees.**

No. 77–1458.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 18, 1977.

Decided Dec. 19, 1977.

As Amended Jan. 5, 1978.

Edward A. Berman, Chicago, Ill., Thomas F. Lewis, Jr., South Bend, Ind., for plaintiff-appellant.

Tom F. Hirschauer, Logansport, Ind., S. J. Crumpacker, South Bend, Ind., for defendants-appellees.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and WYZANSKI, Senior District Judge.[*]

WYZANSKI, Senior District Judge.

Plaintiff appeals from the March 4, 1977 order of the District Court for the Northern District of Indiana, South Bend Division, dismissing plaintiff's August 28, 1975 "Motion for issuance of order to show cause and for contempt judgment."

In our opinion, the critical issue is whether, particularly in view of Fed.Civ.Proc. Rule 65(d), a sufficiently specific order had been directed to defendants so that failure to comply could constitute a basis for a civil contempt.

October 3, 1967 plaintiff filed a complaint alleging that the corporate and individual defendants infringed plaintiff's rights in trade secrets and confidential information. March 25, 1968 plaintiff and defendants entered into a four-page Settlement Agreement. Paragraph 2 provided:

> That National and Figert agree that they will not sell any of said two compounds previously submitted by National to Frigidaire Division of General Motors Corporation for use in making of an air conditioner pulley in competition with the molding compound presently supplied by Porter to said Frigidaire Division of General Motors Corporation and, particularly, that National will not submit any compound to Frigidaire Division of General Motors Corporation for use in making an air conditioner pulley in which the formula of such compound is taken directly from plaintiff's formula and Compound No. 7580–1C, as contained in plaintiff's deposition exhibits one (1) through four (4) inclusive, as aforesaid.

Paragraph 6E provided:

> The Court shall enter a decree that said Settlement Agreement is the judgment in Civil Action No. 4092.

April 15, 1968, in response to a motion made by all the parties, the district court entered an order which included the following:

> The Court having examined said Motion and the Settlement Agreement tendered therewith hereby approved [sic] the said Settlement Agreement and indicates its approval thereon and orders a copy filed as a part of this proceeding.
>
> The Court further orders . . . that the said Settlement Agreement is hereby adopted and made a part of the decree by reference as the judgment herein.

August 28, 1975 plaintiff filed its "Motion for issuance of order to show cause and for contempt judgment." Therein it was alleged:

> 4. National Friction Products Corporation and its President and General Manager, Edward J. Sydor, individually, have

---

[*] Charles E. Wyzanski, Jr., Senior District Judge from Boston, Massachusetts, is sitting by designation.

failed and refused to comply with and have disobeyed and disregarded the provisions of said Court order and consent decree in the following manner:

a. National Friction Products Corporation and Edward J. Sydor have sold and continue to sell the same or similar compounds previously submitted by National to Frigidaire Division of General Motors Corporation for use in making of an air conditioner pulley in competition with the molding compounds supplied by H. K. Porter Company, Inc. to said Frigidaire Division of General Motors Corporation and,

b. National Friction Products Corporation and Edward J. Sydor have submitted and continue to submit a compound to Frigidaire Division of General Motors Corporation for use in making an air conditioner pulley in which the formula of such compound is taken directly from plaintiff's formula and compound # 7580–1C as contained in plaintiff's deposition exhibits one (1) through four (4) inclusive.

5. By reason of the failure and refusal of National Friction Products and Edward J. Sydor to comply with the provisions of the Court order, plaintiff has been damaged in the sum of Two Hundred Thousand and No/100 Dollars ($200,000.00), in lost profits and will be damaged in the future with further loss of profits.

Plaintiff prayed that the corporate defendant and its president (who is not a defendant) should be adjudged in contempt of the district court for having violated the terms of the April 15, 1968 court order and that the court order the corporate defendant and its president to "purge themselves of said contempt by payment to the plaintiff of the sum of Three Hundred Thousand and No/100 Dollars ($300,000.00) in compensatory damages and One Million and No/100 Dollars ($1,000,000.00) in punitive damages, together with all costs of this proceeding, including reasonable attorneys' fees. . . ."

March 4, 1977 the district court dismissed plaintiff's motion "on grounds of lack of jurisdiction." In an accompanying memorandum the District Judge gave as his reason "that the statutory contempt authority embodied in 18 U.S.C. § 401 does not extend to the Settlement Agreement" because "the Settlement Agreement should be treated as a contract rather than a judicial decree."

We agree with the dismissal ordered by the District Judge but not with his reasoning. Dismissal should have been on the merits, not for want of jurisdiction.

Our view is that contempt proceedings were improper because the April 15, 1968 order of the District Court failed to comply with Fed.Civ.Proc. Rule 65(d).

We begin by noting that we are dealing exclusively with the power of the district court with respect to civil contempts,—Cf. *United States v. United Mine Workers*, 330 U.S. 258, 301–302, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Therefore, we are not here concerned with 18 U.S.C. § 401, on which the lower court to some extent relied.

What we are faced with is plaintiff's prayer for both compensatory and coercive remedies for a civil contempt. See *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976). $300,000 is sought to reimburse plaintiff for $200,000 in already-sustained losses in expected profits and undefined additional losses and expenses incurred because the corporate defendant and its president, allegedly, did not comply with the Settlement Agreement "made part of the [April 15, 1968] decree [of the district court] by reference." A further $1,000,000 is sought to coerce the corporate defendant and its president into compliance.

Before either the compensatory or coercive aspects of a court's civil contempt power can be brought into play first, there must have been disobedience of "an operative command capable of 'enforcement' ". *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Assoc.*, 389 U.S. 64, 74, 88 S.Ct. 201, 206, 19 L.Ed.2d 236 (1967), and second, that command, if it is in substance an injunction,

must comply with Rule 65(d) of the Federal Rules of Civil Procedure. *Ibid.*, 74–76, 88 S.Ct. 201.

We turn to the question whether the district court's April 15, 1968 order met the first of these conditions precedent. Of course, a party may incur a legal duty by entering into a settlement agreement, and a court may, pursuant to that agreement, incorporate the terms of the party's obligation in its judgment; but to furnish support for a contempt order the judgment must set forth in specific detail an unequivocal command. Cf. *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113 (3rd Cir. 1970). Here the district court on April 15, 1968 did not go beyond entering a judgment approving of the obligations incurred under the Settlement Agreement. Its judgment did not use language which turned a contractual duty into an obligation to obey an operative command. This case thus resembles one where a court issues a declaratory judgment as to obligations under a contract. In that situation, a party who departed from the judgment so declared would not be in contempt of court because there was no command, although there was a judgment of specific obligation. See *Perez v. Ledesma*, 401 U.S. 82, 124, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Hart & Wechsler's *The Federal Courts and The Federal System*, (2nd ed., 1973) p. 1048, line 14.

Even if we could construe the April 15, 1968 order of the district court as embodying an operative command, it would be unenforceable by contempt proceedings because it would then have to be regarded as an injunctive order required to conform to Fed.Rule of Civ.Proc. 65(d). *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Assoc., supra.*

It is beyond cavil that when it merely incorporated by reference the Settlement Agreement, the April 15, 1968 order ignored that rule's mandatory requirement that an injunction "shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." The error in the April 15,

1968 order was "serious and decisive" and precluded the plaintiff from successfully invoking the district court's contempt powers. *Ibid.* 389 U.S. at p. 76, 88 S.Ct. at p. 208.

Rule 65(d) is no mere extract from a manual of procedural practice. It is a page from the book of liberty.

Equitable decrees, unlike mere money judgments issuing from a common law court, do not depend upon execution by the sheriff but are direct orders to a party. They trace their historical origin to the royal command addressed to a defeated litigant, directing him, under peril of imprisonment, to obey the chancellor's direction. See Joseph H. Beale, Jr., *Contempt of Court, Criminal and Civil*, 21 Harv.L.Rev. 161, 166 *et seq.* (1908). Because of the risks of contempt proceedings, civil or criminal, paramount interests of liberty and due process make it indispensable for the chancellor or his surrogate to speak clearly, explicitly, and specifically if violation of his direction is to subject a litigant—(not to mention, as in the case at bar, a third person who is not a party of record but merely an officer of a party)—to coercive or penal measures, as well as to payment of damages.

The failure of the equity court to spell out in a decree's text the specific obligations resting upon the defeated litigant is fatal to any contempt proceeding unless we are to disregard the teachings of the masters of our law, (see *Swift and Co. v. United States*, 196 U.S. 375, 401, 25 S.Ct. 276, 281, 49 L.Ed. 518 (1905), where Justice Holmes, in oft-quoted language, said that "The defendants ought to be informed as accurately as the case permits what they are forbidden to do,") and the political struggles to limit the powers of the federal judiciary, (Cf. *The Norris La Guardia Act*, 29 U.S.C. §§ 101–115; see Frankfurter and Greene, *The Labor Injunction* (1930) pp. 113–133).

When the question of contempt is raised, just as it is inadequate if the decree has merely referred to a statute, even though the statute clearly created the legal obliga-

tion which warranted the decree (*Swift and Co. v. United States, supra;* New York, N. H. & H. R. Co. v. Interstate Commerce Commission, 200 U.S. 361, 404, 26 S.Ct. 272, 50 L.Ed. 515 (1906); Labor Board v. Express Pub. Co., 312 U.S. 426, 435, 61 S.Ct. 693, 85 L.Ed. 930 (1941); but see McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949)) so it is not enough for enforcement by contempt proceedings if the decree merely referred to a contract, even though the contract clearly created the legal obligation which warranted the decree.

JUDGMENT IS AFFIRMED ON THE GROUND THAT THE MOTION DOES NOT SET FORTH A VALID CAUSE OF ACTION FOR CIVIL CONTEMPT.