YE OLDE APOTHECARY

*v.*

G. O. McCLELLAN

(No. 13907)

Decided April 10, 1979.

*Jackson, Kelly, Holt & O'Farrell, Robert L. Elkins, W. Henry Jernigan, Jr.,* for appellant.

*Greene, Ketchum & Mills, Menis E. Ketchum, Lawrence J. Tweel,* for appellee.

HARSHBARGER, JUSTICE:

G. O. McClellan is a Lincoln County physician who not only supplies medications that ordinarily would require prescriptions, to his patients, but sells drugs to people not his patients who have prescriptions from other sources. Ye Olde Apothecary obtained an injunction against his drug sales, from which he appeals.

Chapter 30, Article 5 of our Code is titled "Pharmacists, Assistant Pharmacists and Drugstores." Its Section 18 prohibits *retail sale* of poisonous, deleterious, or habit-forming drugs by any person other than a registered pharmacist. Its Section 3, among other things, prohibits any person not a registered pharmacist to conduct a pharmacy for the purpose of "retailing, compounding or dispensing medicines, poisons or narcotic drugs. . . ." Section 1 has definitions, among which is subsection (5): "The term 'pharmacy' or 'drugstore' or 'apothecary' shall be held to mean and include every store or shop or other place (a) where drugs are dispensed, or *sold at retail,* or displayed for *sale at retail;* or (b) where physicians' prescriptions are compounded. . . ." [Our emphasis]

*Code,* 30-5-21 excludes from the prohibitions of the article ". . . any legally qualified practitioner of medicine . . . in the compounding of his own prescriptions, or to prevent him from supplying to his patients such medicines as he may deem proper, if such supply is not made as a *sale.*" [Our emphasis]

A state board of pharmacy is established with authority to regulate the pharmacist profession, *Code,* 30-5-2, 5, 6, 7, *et seq.* It has volunteered to define "sale" in its rules to be "[T]he supplying of drugs and medicines for any consideration whether charged separately or incorporated with other charges for professional services. Further, the providing of patients with quantities of drugs and medicines beyond those amounts required for immediate administration shall be deemed a sale." Article 1, Section 1, *Rules and Regulations of the West Virginia Board of Pharmacy.*

We believe the board of pharmacy overreached when it incorporated in its regulations this sale definition. A more contorted definition of "sale" could hardly be imagined.[1] This rule if literally applied would require a physician to prescribe, but not dispense, every pill or potion provided to a patient that was not to be taken immediately.

One wonders if a physician, who by statute and custom can compound his medications, could only mix one teaspoon of cough medicine, for example. Presumably, he might mix, and press, only one dosage of his favorite pill. The patient then, if mobile, according to the board of pharmacy, must shuffle, aching and feverish, to his pharmacist for whatever further doses the physician might prescribe, to complete his recovery.

We must try to reconcile the Chapter 30 provisions; and the sensible way to do so is simply to set aside the pharmacy board's definition of a sale and look for the legislature's intention.

A key to the act's application to physicians is the word "supply": a physician is authorized to supply ". . . to his patients such medicines as he may deem proper, if such supply is not made as a sale." *Code*, 30-5-21.

To supply is to furnish, and the dictionaries indicate that some volume or number of things is contemplated.[2] The fact that the supplying should not be made as a sale really confuses the matter. If it is not made as a sale,

---

[1]Even a gift of medicines beyond those required for immediate use—enough to be taken every four hours, say, until vibrant health returned—would be by the board of pharmacy's definition converted to a sale.

[2]*Funk & Wagnalls New Standard Dictionary*, (1963):

"Supply . . . 1. To furnish with what is needed or desired; provide with adequate material or store . . . as, to supply an army with ammunition. 2. To give, as something needful or desirable; furnish an adequate quantity or number of . . ."

must it be a gift? Must it be, as appellees contend, a supply of free samples? The statutory permission to physicians to supply patients with medicines, but not sell them, would seem to be nonsense because physicians, as the pharmacists argue, could only provide patients with supplies of free sample medicines. We doubt this to be the legislative intent.

Our reconciliation would lead us to conclude that the legislature intended that sale in this context means *retail* sale. The act guarantees those to pharmacists, and a physician cannot sell at retail.

We are cited to *Miners in General Group v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941); *State v. Cole*, W. Va., 238 S.E.2d 849 (1977), and *Wooddell v. Dailey*, W. Va., 230 S.E.2d 466 (1977), that bind us to give undefined words and terms used in legislation, such as "sale," their common, ordinary and accepted meanings. But we must interpret statutes to give practical effect to all their clauses, if possible. *Carolina Lumber Company v. Cunningham*, 156 W. Va. 272, 192 S.E.2d 722 (1972).

Also, the pharmacists enjoin us to give "great deference" to the definition they give through the pharmacy board, to "sale." *Detch v. Board of Education of the County of Greenbrier*, 145 W. Va. 722, 117 S.E.2d 138 (1960).[3] This definition is so deficient that deference is undeserved.

Appellant's brief cites only two cases, both for his contention that the circuit court's order enjoining him from "sale" of drugs, was unclear. *Lichtenstein v. Lichtenstein*, 425 F.2d 1111 (3d Cir. 1970); *H. K. Porter Company, Inc., v. National Friction Products Corp.*, 568 F.2d 24 (7th Cir. 1978). We have here eliminated whatever uncertainty there was in the trial court's order.

---

[3]The pharmacists also urge that we read Chapter 30, Article 5 with Chapter 60A, referring us to *Fruehauf Corp. v. Huntington Moving & Storage Co.*, W. Va., 217 S.E.2d 907 (1975). We need not do so because 60A, the Uniform Controlled Substances Act, gives us no help in defining "sale," as the word appears in *Code*, 30-5-21.

Neither party directs us to cases which have dealt with similar statutes. But we found a few. One decided at the beginning of this century is on point. In *Commonwealth v. Hovious*, 112 Ky. 491, 66 S.W. 3 (1902), a statute prohibited sale or compounding drugs except by a registered pharmacist but provided that "nothing in this act shall apply to or in any manner interfere with, the business of any licensed practicing physician, or prevent him from supplying to his patients such articles as may seem to him proper; or with his compounding his own prescriptions." The court held that the physician might sell drugs to his own patients but not fill prescriptions sent to him by others. *See,* 74 A.L.R. 1086.

We are led by the Kentucky court's interpretation of the similar wording in its statute, and by our reading of the clause in ours that purports to allow a physician to supply his patients with drugs but not sell them to the patients, to hold that physicians may supply drugs to their own patients but not fill prescriptions written by other physicians; nor sell at retail such drugs as they supply to their own patients. They may make reasonable charges for their services, including any medications they supply, and may dispense amounts of drugs as they deem sufficient to the patient's course of treatment.

The injunction is continued, as modified.

℞: *Utri suus daretur.*

*Affirmed, as modified.*