### In re BLOOMER–FISKE INDUSTRIES, INC., Debtor.

#### Bankruptcy No. 86 B 6151.

United States Bankruptcy Court, N.D. Illinois, E.D.

July 21, 1987.

---

## MEMORANDUM OPINION AND ORDER

DAVID H. COAR, Bankruptcy Judge.

This matter comes before the Court on the SHEET METAL WORKERS LOCAL 115's motion for rule to show cause seeking to hold the debtor's officers in civil contempt for failure to fully comply with an order of Court entered on October 22, 1986. The order required the debtor to make contributions to the Union's fringe benefit funds. These contributions were to have been made pursuant to the collective bargaining agreement entered into between the parties. Raymond V. Schroeder is the President of Bloomer-Fiske Industries, Inc., the Chapter 11 debtor in this case. The Union's show cause motion is now directed solely at Mr. Schroeder. The Union requests that Mr. Schroeder be held in civil contempt and that he be required to pay to the Union the contributions the debtor was to have paid under the order and to compensate the Union for the attorneys' fees incurred in the prosecution of this contempt proceeding. For the reasons stated below, the Union's motion is denied.

## FACTS

On April 1, 1986, an involuntary petition under Chapter 7 was filed against Bloomer-Fiske Industries, Inc. [debtor] by Sheet Metal Workers Local 115 [Union].[1] On May 9, 1986, the debtor filed a petition converting its case into Chapter 11 where this case now remains.

Bloomer-Fiske and the Union were subject to a collective bargaining agreement pre-dating the commencement of debtor's bankruptcy case. Under the collective bargaining agreement, the debtor was required to make mandatory contributions to certain fringe benefit funds. On May 31, 1986, the collective bargaining agreement expired. Nevertheless, the debtor agreed with the Union that it would continue to make contributions to the fringe benefit funds. The debtor's contributions to the

Holleb & Coff, Chicago, Ill., for Bloomer-Fiske.

· Carmell, Charone, Widmer & Mathews, Ltd., Chicago, Ill., for Sheet Metal Workers Local 115.

1. Joining the Union in this involuntary petition were Sheet Metal Workers Local 115 Health & Welfare Fund and Sheet Metal Workers Local 115 Pension Fund.

fringe benefit funds, however, fell in arrears.

The Union filed an application requesting payment from the debtor of these administrative expenses in October, 1986. The Union and the debtor subsequently arrived at an agreement and presented to the Court a draft order which reflected the terms of that agreement. The order was entered on October 22, 1986, and provides, in relevant part, as follows:

IT IS HEREBY ORDERED as follows: 1. That BLOOMER–FISKE INDUSTRIES, INC., debtor and debtor-in-possession herein, shall pay to Sheet Metal Workers Local 115 certain contributions incurred during the month of August, 1986, pursuant to a Collective Bargaining Agreement with Sheet Metal Workers Local 115 on or before October 13, 1986. 2. BLOOMER–FISKE INDUSTRIES, INC. further shall make such additional payments to the Sheet Metal Workers Local 115 as may be necessary to become current on all payments required to be made and subsequent to the filing of the Chapter 11 petition herein, and pursuant to the Collective Bargaining Agreement entered into between the parties. Such sums shall be paid within 60 days of the entry of this order.

On October 13, 1986, and in apparent satisfaction of paragraph 1 of the October 22, 1986 order, debtor paid the Union approximately $30,000.00 for contributions incurred during the month of August, 1986. Debtor's obligations under paragraph 2 of the October 22, 1986 order remain unsatisfied. According to the Union, the debtor owes approximately $50,000.00 in contributions to the fringe benefit funds.

On January 20, 1987, the Union filed its show cause motion against debtor's officers for their failure to direct the debtor to make all the contributions to the fringe benefit funds as required by paragraph 2 of the October 22, 1986 order. In its subsequent pleadings, the Union has restricted its show cause motion to the debtor's President, Raymond V. Schroeder. The Union requests that this Court hold Mr. Schroeder in civil contempt of court for having failed to direct the debtor to fully comply with the October 22, 1986 order. More specifically, the Union seeks to have Mr. Schroeder pay from his personal funds the amount the debtor was to have paid under paragraph 2 of the October 22, 1986 order, or $50,000.00. In addition, the Union requests that Mr. Schroeder pay the attorneys' fees incurred by the Union in its prosecution of this contempt proceeding.

On February 19, 1987, an evidentiary hearing was held on the Union's show cause motion. Mr. Schroeder testified that three days after the debtor made its first payment of $30,000 to the fringe benefit funds, the Union, which represented all of debtor's manufacturing personnel, went on strike. Consequently, debtor's manufacturing operations ceased. Negotiations with the Union were fruitless, and the Union's employees never returned to work. Throughout debtor's bankruptcy case, the debtor was operating under cash collateral orders. Under these cash collateral orders, the debtor's bank agreed to the use of its cash collateral so long as the debtor maintained certain production levels. Furthermore, the debtor was to use the cash collateral to pay its ordinary and necessary business expenses. Mr. Schroeder further testified that the debtor continued to spend funds after the entry of the October 22, 1986 order, and that these funds were expended in order to keep the business operating. The debtor's contributions to the fringe benefit funds were suspended. Despite its effort, the debtor was not able to meet its current operating expenses. Under these circumstances, the debtor, according to Mr. Schroeder, was left without sufficient funds to make the remaining contributions owed to the Union's fringe benefit funds.

The debtor now plans to liquidate its assets in Chapter 11 as evidenced by the filing of the debtor's liquidation plan on February 2, 1987.

It is the Union's contention that the debtor was not at liberty to spend funds on hand in order to meet current operating expenses absent an order which would excuse the debtor from meeting its obligation to make contributions to the fringe benefit

funds as set forth in the October 22, 1986 order. Moreover, Mr. Schroeder should be held in civil contempt for directing the debtor to spend the funds as it did.

In defense of Mr. Schroeder, the debtor raises a number of issues, the first of which concerns whether the October 22, 1986 order is legally sufficient to support a civil contempt order.

## ANALYSIS

The United States Supreme Court has mandated that two requirements be met before a court can invoke its civil contempt power.[2] *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Assoc.*, 389 U.S. 64, 74, 88 S.Ct. 201, 206, 19 L.Ed.2d 236 (1967). These requirements were summarized in *H.K. Porter Company, Inc. v. National Friction Products Corp.*, 568 F.2d 24 (7th Cir.1978), where the Seventh Circuit observed that "before either the compensatory or coercive aspects of a court's civil contempt power can be brought into play first, there must have been disobedience of an 'operative command capable of enforcement,' [citation omitted] and second, that command, if it is in substance an injunction, must comply with Rule 65(d) of the Federal Rules of Civil Procedure." *Id.* at 27.

> Rule 65(d) provides:
> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act

or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Fed.R.Civ.P. 65(d).

Rule 65(d) is designed to prevent the inevitable "confusion" which would result from orders that lack specific details. *International Longshoremen's Association*, 389 U.S. at 74, 88 S.Ct. at 207. When the meaning of such orders can only be determined by reference to another document, then the confusion is compounded.

In the present case, the October 22, 1986 order required the debtor to make contributions to the Union's fringe benefit funds pursuant to a certain collective bargaining agreement. By its terms, the October 22, 1986 order was an "operative command" of this Court "capable of enforcement" because the order commanded the only thing sought by the Union which was the debtor's compliance with certain terms as set forth in the collective bargaining agreement. *See, Warehouse, Mail Order, Office Technical and Professional Employees, Local 743 v. Columbia Rustproof, Inc.*, 550 F.Supp. 73, 75 (N.D.Ill. 1982). However, it is necessary to look to the collective bargaining agreement in order to determine whether the debtor complied with the October 22, 1986 order. The amount the debtor was to have paid to the fringe benefit funds was set forth in the

---

**2.** Notwithstanding the uncertain state of the law, this Court is of the opinion that the bankruptcy court has the inherent power to issue civil contempt orders. "All courts, whether created pursuant to Article I or Article III, have inherent contempt power to enforce compliance with their lawful orders. The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order." *United States Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McLean Industries, Inc.)*, 68 B.R. 690, 695 (Bankr.S.D.N.Y.1986), citing *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). *See, In re Johns-Manville Corp.*, 26 B.R. 919, 924 (Bankr.S.D.N.Y.1983). However, there is case authority which supports the view that the contempt power cannot be given to the bankruptcy court. *Martin Trigona*

*v. Shiff*, 19 B.R. 1001 (D.C.Conn.1982), rev'd on other grounds, 702 F.2d 380 (2d Cir.1983); *In re Omega Equipment Corp.*, 51 B.R. 569 (D.D.C. 1985); *see also, Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1044 (7th Cir.1984) where, in its analysis of the Magistrate Act, 28 U.S.C. § 636(e), the Seventh Circuit held that as between magistrates and Article III judicial officers, the contempt power resides exclusively in the hands of Article III judges. *But see, In re Kalpana Electronics, Inc.*, 58 B.R. 326, 335 (Bankr.E.D.N.Y.1986) where the court in search of middle ground observed that the prudent course of action would be to "certify the facts to the district court, rather than enter the final order which this court believes it would have authority to do." *See,* Proposed Bankruptcy Rule 9020.

collective bargaining agreement. In short, whether the debtor was in compliance with the October 22, 1986 order can only be determined by reference to the collective bargaining agreement, and in this regard the order does not comply with the mandate of Rule 65. This being so, the invocation of this Court's civil contempt power is not permissible. Faced with a similar situation, the district court in *Central States Southeast and Southwest Areas Pension Fund v. Richardson Trucking, Inc.*, 451 F.Supp. 349, 350 (E.D.Wis.1978), refused to invoke its civil contempt powers since "the orders did not themselves set forth what payments the defendants were required to make, but instead did nothing more than incorporate the terms of the parties' agreements with respect to payment schedules. The orders thus fail to meet the directive of Rule 65(d), and even if they are disobeyed, they may not be made the subject of civil contempt proceedings."

This result may seem harsh. Nevertheless, the failure to comply with the terms of Rule 65(d) is both "serious" and "decisive." *International Longshoremen's Association*, 389 U.S. at 76, 88 S.Ct. at 208. The Supreme Court warns that "[t]he judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *Id.*

The Court concludes that the October 22, 1986 order is drafted in such a manner as to preclude this Court from exercising its power of civil contempt. Furthermore, the imposition of this Court's civil contempt is not warranted in this case because the debtor was subject to conflicting mandates stemming from the cash collateral orders which required the debtor to use the cash collateral to pay its ordinary and necessary business expenses and the October 22, 1986 order which required the debtor to make contributions to the Union's fringe benefit funds. The debtor should not be sanctioned for having to reconcile the ambiguity these conflicting court orders presented.

Although this discussion could end here, the Court shall make one more observation. It has long been established that a party's inability to comply with a contempt sanction is generally recognized as a defense to a charge of civil contempt. *United States v. Rylander,* 656 F.2d 1313, 1317 (9th Cir.1981); *See, Shillitani v. United States,* 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966); *Falstaff Brewing Corporation v. Miller Brewing Company,* 702 F.2d 770, 778 (9th Cir.1983). Even if the October 22, 1986 order could support a civil contempt action, the debtor has provided clear and convincing proof establishing its inability to comply with such a civil contempt order. The debtor made every effort to continue its business operations which would have been the source of revenue for the payment of its contributions to the fringe benefit funds. The strike by the Union left the debtor financially crippled. The debtor could not turn to the funds authorized by the cash collateral orders because they were to be used for ordinary and necessary operating expenses. Given these facts, the issuance of a civil contempt sanction would serve no purpose.

Accordingly, for the reasons stated above, the Sheet Metal Workers Local 115's Motion for Rule to Show Cause is hereby denied.