**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DEBRA HATTEN-GONZALES,
individually and on behalf of all others
similarly situated,

      Plaintiffs-Appellees,

v.

PAMELA S. HYDE, Secretary of the
New Mexico Human Services
Department,

      Defendant-Appellant.

Nos. 08-2009 & 08-2146

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. Nos. 88-CV-00385-JEC-ACT and 88-CV-00786-JEC-ACT)**

---

Paul R. Ritzma, General Counsel (Jerry A. Walz, Walz and Associates, Cedar
Crest, New Mexico, with him on the briefs), New Mexico Human Services
Department, Santa Fe, New Mexico, for Defendant–Appellant.

Daniel Yohalem (Jane B. Yohalem, and Gail J. Evans, N.M. Center on Law and
Poverty, Albuquerque, New Mexico, with him on the briefs), Santa Fe, New
Mexico, for Plaintiffs–Appellees.

---

Before **LUCERO**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

Entangled in the present litigation for more than twenty years, the New Mexico Human Services Department ("HSD") seeks review of two interlocutory orders of the district court. HSD and a plaintiff class headed by Debra Hatten-Gonzales have been operating under a Modified Settlement Agreement ("MSA") approved by the district court in 1998. Although it restrained the parties from violating the MSA, the district court has not entered a final judgment, and the case remains on its active docket.

In 2005, the parties' then-dormant dispute once again erupted. HSD sought to end plaintiffs' periodic review of its files, ongoing for a dozen years, and have the case dismissed. Plaintiffs sought enforcement of the MSA, alleging that HSD had breached several of its provisions. From this bevy of motions, HSD asks us to review two orders. The first denied its motion to dismiss. The second, entered while the first was already on appeal, granted plaintiffs' motion to enforce compliance with the MSA. We address both appeals in this opinion.

Although the parties contend that we possess jurisdiction to review both orders pursuant to 28 U.S.C. § 1292(a)(1), we disagree. As to the first, HSD's motion to dismiss did not seek to dissolve an injunction, and thus, the court's order was not one refusing to dissolve an injunction. The second order merely interpreted an existing injunction, thus it does not fall within the strictures of

§ 1292(a)(1).  Accordingly, we dismiss HSD's appeals for want of jurisdiction.

# I

## A

In 1988, Hatten-Gonzales filed suit against the Secretary of HSD.  Her complaint alleged that HSD violated various federal laws in determining applicants' eligibility for food stamps, Aid to Families with Dependent Children ("AFDC"), and Medicaid.  She sought to represent a class of all New Mexico residents who have applied, are applying, or will apply for food stamps, AFDC, or Medicaid benefits, and requested an injunction prohibiting HSD from engaging in the complained-of practices.

Following class certification, the parties reached a settlement agreement, and on August 29, 1990, the district court approved it.  In its order, the court "restrained [the parties] from violating the terms, conditions and undertakings of the Settlement Agreement."  It also "retain[ed] jurisdiction over this matter to enforce the terms, conditions and undertakings of the Settlement Agreement."

Under the agreement, HSD was required to take various steps to revise its benefits application system.  Several provisions govern plaintiffs' role in monitoring compliance with the settlement agreement:

> To the extent that any term of this Agreement is prospective in nature, HSD agrees to continue to meet and to confer with counsel for the applicants regarding the progress made towards implementation of this Agreement's terms until each such term is finally implemented. The parties agree to make good faith efforts to

resolve any differences that may arise in the course of rendering this Agreement operational. . . .
. . . .
. . . Once the terms of this Agreement have become fully operational and permanently incorporated into HSD's administration of the AFDC, Food Stamp and Medicaid programs, the [plaintiffs] will seek dismissal of these actions, with prejudice regarding only such issues actually resolved in this Agreement, from the Court. Dismissal will be requested in strict accordance with the timetables set forth in Section IV ([Plaintiffs'] Review of Implementation Procedures) of this Agreement.

Section IV, in turn, states:

The parties agree that [plaintiffs] are entitled to review the implementation of this Agreement to determine if its terms, conditions and undertakings are implemented in a timely and correct fashion. . . .
1. The review of implementation procedures will commence six months after this agreement is approved by the Court and will be completed by the end of the second annual quarter following full implementation of the terms, conditions and undertakings of this Agreement, subject to the timetable regarding Section II of this Agreement set forth in the following paragraph. Within 30 days of completion of the review of implementation procedures, the applicants will request from the Court dismissal with prejudice of all such issues actually resolved by this Agreement.

The reference to "Section II" concerns a December 31, 1990 deadline for HSD to complete certain reforms to its application processing practices. The "following paragraph" reference is to Section IV.2, which permitted plaintiffs' counsel to review a set of 40 case files in March of 1991 to determine whether HSD was complying with the agreed-upon reforms. "If HSD is fully complying with those terms, conditions and undertakings," the agreement states, "plaintiffs will, within 30 days, request from the Court dismissal with prejudice." If HSD

-4-

was not complying, plaintiffs' counsel could review 40 additional case files in June 1991. "Full compliance" and "full implementation" are defined in the agreement synonymously as "HSD has completed, enacted and is operating pursuant to all the terms, conditions and undertaking of [the] Agreement."

At the parties' request, the settlement agreement was twice modified. In 1992, the court entered an order: (1) extending deadlines contained in Section II; (2) imposing a schedule for developing a computerized tracking system; and (3) rescheduling the case-file review discussed in Section IV.2 for January 1993. It appears that two file reviews occurred in 1993, but the record does not indicate whether plaintiffs deemed HSD in full compliance at that time. In any event, plaintiffs did not move to dismiss as contemplated by Section IV.1.

In 1998, after the AFDC program was replaced with Temporary Assistance to Needy Families ("TANF"), the parties submitted the MSA for court approval. The above-quoted monitoring provisions remained unchanged, with the exception of a deleted reference to AFDC. On August 27, 1998, the court entered an "Order Modifying Settlement Agreement." As with the initial settlement agreement, the court "restrained [the parties] from violating the terms, conditions and undertakings of the Modified Settlement Agreement," and it retained jurisdiction to enforce it.

The next day, the court entered judgment dismissing the case without prejudice but "retain[ing] complete jurisdiction to vacate this judgment and to

-5-

reopen the action upon cause shown that the terms of the settlement agreement have been breached and further litigation is necessary." Shortly thereafter, however, the court set aside that judgment and restored the case to its active docket after plaintiffs' counsel expressed unease with dismissal.

**B**

Between 1990 and 2005, plaintiffs' counsel conducted various monitoring activities and periodically moved for attorneys' fees related to their monitoring efforts. Many of these requests were unopposed. In 1997, plaintiffs filed a motion seeking to enforce certain provisions of the settlement agreement and the order accepting it. Granting the motion in part, the court stated that "Defendant is hereby enjoined from imposing completion of a job search as an eligibility requirement for applicants seeking assistance under any AFDC, TANF or equivalent public assistance program."

In 2005, the parties' dispute flared up yet again. Plaintiffs filed a "Second Report on Department of Human Services' Compliance with Hatten-Gonzales" in the district court based on their review of 180 files from four HSD county offices. Plaintiffs' report found "violations of the Hatten-Gonzales requirements in every county reviewed and in virtually every aspect of the application process." Following completion of the report, plaintiffs filed a "Motion to Enforce Compliance with Court's Order," complaining that HSD refused to meet and confer in good faith regarding implementation of the MSA's terms. They sought

-6-

an order: (1) directing HSD to prepare a report addressing each MSA violation alleged in plaintiffs' report including steps that had been and would be taken to remedy these violations; (2) requiring HSD to meet with plaintiffs' counsel monthly from July to December 2006; and (3) permitting plaintiffs to conduct a "thorough review" of HSD's practices.                    .

HSD responded by asking the district court to declare it in full compliance with the MSA. On July 13, 2006, the district court entered a memorandum opinion and order granting plaintiffs' motion to enforce compliance. It found that HSD had breached its duty to confer with plaintiffs in good faith and held that plaintiffs' "requests for meetings between July and December and further cooperation thereafter will hereby be enforced."

Following the court-ordered meetings (and another flurry of motions), HSD filed a "Motion to Dismiss and Memeorandum [sic] in Support." In that motion, HSD contended that "recent case law has raised a jurisdictional question concerning the Plaintiffs' apparent lack of authority to continue monitoring [HSD's] compliance beyond the deadlines set forth in the [MSA] that [the district court] has retained jurisdiction to enforce." Specifically, HSD argued that it previously acquiesced in plaintiffs' monitoring and attorneys' fee demands based on a misreading of Duran v. Carruthers, 885 F.2d 1492 (10th Cir. 1989), which was dispelled by a subsequent opinion, Johnson v. City of Tulsa, 489 F.3d 1089 (10th Cir. 2007). Citing "Fed. R. Civ. P. 12(b)(1), and/or (6)," HSD argued that it

was "entitled to dismissal of [the] action because, by its own terms and conditions, the MSA precludes any further action or activities on the part of the Plaintiffs."

The district court denied HSD's motion. It recited the standards for dismissal under Rules 12(b)(1) and 12(b)(6), finding "that the Johnson case does not prevent Plaintiffs from monitoring compliance and consequently, there is no jurisdictional question." HSD then appealed that order. The appeal was assigned case number 08-2009 in this court.

**C**

While HSD's appeal was pending before this court, the parties' motions practice continued apace in the district court. On May 9, 2008, plaintiffs moved the district court to rule on its previously-filed "Second Motion to Enforce Compliance with Court Order," in which plaintiffs sought to enjoin HSD from requiring an applicant for benefits to provide the social security numbers and immigration statuses of non-applicants living in the applicant's household. Plaintiffs argued that notwithstanding the pending interlocutory appeal, the district court was free to supervise the parties' compliance with the MSA pursuant to Fed. R. Civ. P. 62(c). HSD countered that the district court lacked jurisdiction, arguing that Rule 62(c) was inapposite because

> [t]he Order on appeal is not a grant, dissolution or denial of an injunction, as is required under [sic] as an exception to an automatic stay during the appeal. The Order on appeal is effectively, the

-8-

Court's denial of Defendant's motion to enforce the terms of the settlement with respect to dismissal by the Plaintiffs.

The district court accepted plaintiffs' interpretation of Rule 62(c) and granted plaintiffs' "Second Motion to Enforce Compliance with Court Order." Based on a provision of the MSA which states that "[a]pplicants will not be required to complete questionnaires seeking information which is unnecessary to determine eligibility and benefits amounts," the court ordered that HSD "must modify its applications for public benefits so that no application requires the social security number and citizenship status of every member of the household." Following entry of that order, HSD filed a second notice of appeal, which was assigned case number 08-2146 in this court.

## II

Before proceeding to the merits of HSD's appeals, we must consider our jurisdiction. See Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1276 (10th Cir. 2001) ("A federal court has an independent obligation to examine its own jurisdiction."). As a general matter, we review only final decisions of the district courts. See Rekstad v. First Bank Sys., Inc., 238 F.3d 1259, 1261 (10th Cir. 2001); see also 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . .").

There are, of course, several exceptions to the finality rule. We have

jurisdiction to review "interlocutory orders of the district courts of the United States granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." § 1292(a)(1). However, "[s]ection 1292(a) was intended to carve out only a limited exception to the final-judgment rule of 28 U.S.C. § 1291 and the long-established policy against piecemeal appeals." Pimentel & Sons Guitar Makers, Inc. v. Pimentel, 477 F.3d 1151, 1153 (10th Cir. 2007) (quotation omitted). Accordingly, courts "have construed the statute narrowly to ensure that appeal as of right under § 1292(a)(1) will be available only in circumstances where an appeal will further the statutory purpose of permitting litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." Carson v. Am. Brands, Inc., 450 U.S. 79, 84 (1981) (quotations and alteration omitted).

## A

In case number 08-2009, HSD asks us to review the district court's December 17, 2007 order denying its "Motion to Dismiss and Memeorandum [sic] in Support." HSD cites only § 1291 in support of this court's jurisdiction, but the order at issue plainly did not constitute a "final decision[]." § 1291. A final decision is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233 (1945); see Gray v. Baker, 399 F.3d 1241, 1244 (10th Cir. 2005). The appealed order denied HSD's request that the case be dismissed. "A denial of a motion to

dismiss ordinarily may not be appealed because it is not a final decision."

Eastwood v. Dep't of Corrs., 846 F.2d 627, 629 (10th Cir. 1988).[1]  Further, as

evident from the district court's post-notice of appeal actions, the order at issue

did not end this enduring litigation.

Curiously, plaintiffs provide an alternate basis for jurisdiction, suggesting

that the district court's order "refus[ed] to dissolve or modify [an] injunction[]."

§ 1292(a)(1).  We cannot agree with that characterization.  To "refuse" to dissolve

or modify an injunction, a court must first be asked to do so; the district court was

not.

In its motion to dismiss, HSD did not request dissolution or modification of

an injunction.  Instead, it challenged plaintiffs' authority to monitor compliance

with the MSA and collect additional attorneys' fees for their monitoring

activities.  Although the motion is not altogether clear, HSD appears to argue that

the absence of specific monitoring provisions in the MSA divests the district

court of jurisdiction.  HSD cited Rules 12(b)(1) and (6) and sought "an Order

dismissing this action."  HSD did not seek to alter or eliminate any of the terms

of the MSA, nor did it cite Rule 60(b)(5) or the standards for obtaining relief

from an order.  See Horne v. Flores, 129 S. Ct. 2579, 2593-95 (2009).

In ruling on the motion, the district court unsurprisingly recited the legal

---

[1] HSD does not attempt to invoke the collateral order doctrine, see
Eastwood, 846 F.2d at 629, nor do we see any basis for it to do so.

-11-

standards applicable to motions under 12(b)(1) and (6).  Neither the motion nor the order denying it use the terms "injunction," "dissolve," or "modify."

Further, and perhaps most importantly, HSD disclaimed the reading of its own motion that plaintiffs now urge.  After HSD filed its first appeal, the district court considered its jurisdiction to enforce the MSA while the appeal was pending.  HSD argued that the district court lacked jurisdiction because the order being appealed did not fall within the ambit of Rule 62(c).  Rather, HSD urged, the "[o]rder on appeal is effectively, <u>the Court's denial of Defendant's motion to enforce the terms of the settlement</u> with respect to dismissal by the Plaintiffs." (Emphasis added).

We see no reason to reject HSD's interpretation of its own motion. Although this court does not insist on magic words, we expect parties—especially those represented by counsel—to be explicit when they seek to dissolve or modify an injunction.  <u>See</u> Fed. R. Civ. P. 7(b)(C) (motions must "state the relief sought").  HSD's motion to dismiss, along with the court's order denying that motion, do not explicitly put the modification or dissolution of an injunction at issue.  Given HSD's post-appeal explanation of its motion to dismiss, we will not strain to recharacterize it.  <u>Cf.</u> <u>Lermer Germany GmbH v. Lermer Corp.</u>, 94 F.3d 1575, 1577 (Fed. Cir. 1996) ("[T]here is no reason to grant a right to appellate review of a district court order denying relief that was not sought.").

In so holding, we do not foreclose the possibility that a motion may seek to

dissolve or modify an injunction in effect without seeking relief in those precise terms. For example, in Keyes v. School District Number 1, 895 F.2d 659 (10th Cir. 1990), we exercised jurisdiction over an interlocutory appeal after the district court denied defendant school district's motion seeking a declaration of "unitary" status. Id. at 661, 663. We rejected plaintiffs' contention that the order merely declined to enter declaratory relief, reasoning that a declaration of unitary status would effectively dissolve the injunction. See id. at 663. This was so because the declaration sought "does not contemplate later judicial reappraisal" of a school district's compliance with a desegregation plan. Id. at 666.[2]

In our present case, granting the motion would not have led to dissolution of the MSA. Had HSD's motion been granted, the district court would have dismissed the case from its active docket and refused further attorneys' fee requests from plaintiffs, but the MSA would have remained in effect. The MSA specifically provides that the court will retain "continuing jurisdiction . . . to resolve disputes and enforce the terms of" the MSA even after dismissal with prejudice. Cf. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994) (district courts possess ancillary jurisdiction to enforce a settlement

---

[2] The school district also explicitly sought an order "dissolving the injunction as it related to student assignments" in the same motion, clearly conferring jurisdiction. Id. at 662. Keyes nonetheless illustrates that a motion ostensibly seeking declaratory relief could in effect be more aptly characterized as an order refusing to dissolve an injunction.

agreement post-dismissal if the court expressly retains jurisdiction or incorporates the agreement in its order of dismissal); Morris v. City of Hobart, 39 F.3d 1105, 1110 (10th Cir. 1994) (citing Kokkonen, 511 U.S. 375) (same).[3]

Because HSD did not request dissolution or modification of an injunction, the district court's December 17, 2007 order cannot be characterized as one "refusing to dissolve or modify [an] injunction[]." § 1292(a)(1). Accordingly, we conclude that neither § 1292(a)(1) nor § 1291 confers jurisdiction upon this court over case number 08-2009.

**B**

As to HSD's second appeal, case number 08-2146, we reach the same conclusion. HSD asks us to review the district court's June 4, 2008 order requiring HSD to "modify its applications for public benefits so that no application requires the social security number and citizenship status of every member of the household." HSD relies solely on § 1292(a) as a jurisdictional font, contending that order modified a prior injunction. Plaintiffs counter that we lack jurisdiction because the order on appeal merely enforced a prior injunction.

---

[3] To the extent our holding raises a concern that HSD will be forever unable to challenge the district court's retention of jurisdiction, we note that HSD can file a proper motion to dissolve the court's order mandating compliance with the MSA. Whether granted or denied, a ruling on that motion would be subject to appellate review. See § 1292(a)(1).

**1**

Before considering whether the June 4, 2008 order modified or merely

enforced a prior injunction, we must necessarily consider whether the August 27,

1998 order adopting the MSA constituted an injunction for purposes of our

appellate jurisdiction. If the 1998 order was not an injunction, the order under

appeal cannot be said to have enforced "an existing injunction," Pimentel, 477

F.3d at 1154. In that event, the district court's June 4, 2008 order would be a

fresh injunction subject to appellate review. See § 1292(a)(1).

The August 27, 1998 order states that the parties "are restrained from

violating the terms, conditions and undertakings of the Modified Settlement

Agreement." The district court attached the MSA to its order, and "incorporated

[it] herein by this reference as though fully set forth at this point." Both the

appealed order and the MSA contain mandatory language prohibiting the parties

from engaging in certain activities and would appear to subject a non-compliant

party to contempt. See Consumers Gas & Oil, Inc. v. Farmland Indus. Inc., 84

F.3d 367, 370 (10th Cir. 1996). But, as HSD argues in contesting the district

court's authority to act during the pendency of its first appeal, the order

approving the MSA may not comply with Fed. R. Civ. P. 65(d).

Rule 65 requires that "[e]very order granting an injunction and every

restraining order must . . . describe in reasonable detail—and not by referring to

the complaint or other document—the act or acts restrained or required." Fed. R.

-15-

Civ. P. 65(d)(1), (d)(1)(C) (emphasis added). It "expressly proscribes the issuance of an injunction which describes the enjoined conduct by referring to another document." Consumers Gas & Oil, Inc., 84 F.3d at 371 (quotation omitted). This circuit strictly applies Rule 65(d). Id.

This strict approach mandates that the parties "be able to interpret the injunction from the four corners of the order." Seattle-First Nat'l Bank v. Manges, 900 F.2d 795, 800 (5th Cir. 1990) (quotation omitted); see also H. K. Porter Co. v. Nat'l Friction Prods. Corp., 568 F.2d 24, 27 (7th Cir. 1978) (when district court "merely incorporated by reference [a] Settlement Agreement," it ignored Rule 65(d)'s "mandatory requirement"). Plaintiffs argue that Rule 65(d) is satisfied because the district court physically attached the MSA to its order, thus it is not an "other document" within the meaning of the rule.

We need not decide whether the 1998 order violated Rule 65(d) because, even if it did, it is nevertheless an injunction for purposes of § 1292(a)(1). Our holding is guided by a dyad of Supreme Court opinions, Gunn v. University Committee to End the War in Vietnam, 399 U.S. 383 (1970), and Schmidt v. Lessard, 414 U.S. 473 (1974) (per curiam).

In Gunn, a group of protesters sought to enjoin enforcement of a Texas disturbing-the-peace statute. 399 U.S. at 384-85. A three-judge district court panel entered an order providing:

We reach the conclusion that [the statute] is impermissibly and

-16-

unconstitutionally broad.  The Plaintiffs herein are entitled to their declaratory judgment to that effect, and to injunctive relief against the enforcement of [the statute] as now worded, insofar as it may affect rights guaranteed under the First Amendment.  However, it is the Order of this Court that the mandate shall be stayed and this Court shall retain jurisdiction of the cause pending the next session, special or general, of the Texas legislature, at which time the State of Texas may, if it so desires, enact such disturbing-the-peace statute as will meet constitutional requirements.

Id. at 386.  Defendants appealed directly to the Supreme Court under § 1253, which permitted direct appeals from three-judge panel orders "granting or denying . . . an interlocutory or permanent injunction in any civil action."  Gunn, 399 U.S. 386.  Noting that the order did not comply with Rule 65(d), the Court found it "[im]possible to know with any certainty what the [district] court has decided."  Id. at 388.  Accordingly, the Court held that it lacked jurisdiction because "there was no order of any kind either granting or denying an injunction."  Id. at 387.  However, in a footnote, the Court stated:

This is not to suggest that lack of specificity in an injunctive order would alone deprive the Court of jurisdiction under § 1253.  But the absence of any semblance of effort by the District Court to comply with Rule 65(d) makes clear that the court did not think that its per curiam opinion itself constituted an order granting an injunction.

Id. at 389 n.4 (emphasis added).

Just four years later, that dicta was applied.  In Schmidt, the Court reviewed another three-judge panel opinion, this one followed by a judgment decreeing, "It is Ordered and Adjudged that judgment be and hereby is entered in accordance with the Opinion heretofore entered."  414 U.S. at 474.  The three-

-17-

judge panel's opinion provided that plaintiffs "are entitled to declaratory and injunctive relief against further enforcement of the present [statutory] scheme against them." Id. Because the judgment contravened Rule 65(d), the appellee argued that the Court lacked jurisdiction, citing Gunn. Id. at 474-75. The Court rejected appellee's contention, distinguishing Gunn as follows:

> While the record in Gunn was devoid of any order granting injunctive relief, there was in the present case a judgment entered "in accordance with the Opinion." Since the opinion of the District Court by its own terms authorizes the granting of injunctive relief to the appellee, we believe that the judgment here is sufficient to invoke our jurisdiction under 28 U.S.C. § 1253.

Schmidt, 414 U.S. at 475.

Accordingly, the court held that "although the order below [wa]s sufficient to invoke our appellate jurisdiction, it plainly does not satisfy the important requirements of Rule 65 (d)." Id. at 477. In other words, an injunction that fails to meet Rule 65(d)'s requirements is nevertheless an "injunction" for purposes of determining appellate jurisdiction.

We conclude that the order approving the MSA, like the order in Schmidt, serves as an injunction for jurisdictional purposes, even if it fails to comply with Rule 65(d). At worst, the MSA-approving order suffers from a technical defect.[4]

---

[4] By characterizing the potential defect as "technical," we do not mean to gainsay the importance of Rule 65(d). "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one." Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n, 389

(continued...)

Although it may have fallen short of the specificity requirement of Rule 65(d) by referentially incorporating the MSA,[5] the order is not so vague as to make it "[im]possible to know with any certainty what the [district] court has decided." Gunn, 399 U.S. at 388. To the contrary, the district court plainly intended to provide plaintiffs injunctive relief and entered an order attempting to do so. As the district court explained regarding the August 1998 order, "[i]t appears beyond any reasonable dispute that both the nature of the lawsuit and the terms of the Decree contemplate continued, injunctive relief."

**2**

Having concluded that the August 1998 order was an injunction within the meaning of § 1292(a)(1), we must next consider whether the June 4, 2008 order modified that earlier injunction, or merely enforced or clarified the earlier injunction. Unlike modification orders, "[a]ppellate courts do not have jurisdiction to review a district court order that merely interprets or clarifies, without modifying, an existing injunction." Pimentel, 477 F.3d at 1154. "Whether an order interprets or modifies an injunction is determined by its actual, practical effect." Id. at 1154 (citation omitted). "An order is a clarification if it

---

[4](...continued)
U.S. 64, 76 (1967).

[5] Given our conclusion that we lack jurisdiction over HSD's appeals, we express no opinion as to whether the order approving the MSA complies with Rule 65(d).

does not change the parties' original legal relationship, but merely restates that relationship in new terms." Roberts v. Colo. State Bd. of Agric., 998 F.2d 824, 827 (10th Cir. 1993) (quotation and alteration omitted). "A modification, by contrast, alters the legal relationship between the parties, or substantially changes the terms and force of the injunction." Mikel v. Gourley, 951 F.2d 166, 169 (8th Cir. 1991) (quotation omitted); see also Roberts, 998 F.2d at 827 (citing Mikel, 951 F.2d at 169). "To change the legal relationship of the parties, the order must change the command of the earlier injunction, relax its prohibitions, or release any respondent from its grip." Pimentel, 477 F.3d at 1154 (quotation omitted).

We conclude that the order at issue enforced and clarified, but did not modify, the district court's August 1998 injunction. The underlying motion expressly sought "to Enforce Compliance with Court Order." While labeling is not dispositive, Pimentel, 477 F.3d at 1154, the content of the motion squares with its label. Plaintiffs' motion argued that HSD violated two specific terms of the MSA by requiring applicants to provide social security numbers and immigration statuses of individuals residing with them. The district court examined the terms of the MSA and agreed with plaintiffs. It accordingly ordered HSD to cease its violation by altering the application forms.

Yet, entry of this order did not "alter[] the legal relationship between the parties or substantially change[] the terms and force of the injunction." Mikel, 951 F.2d at 169 (quotation omitted). HSD was already precluded from requiring

-20-

applicants "to complete questionnaires seeking information which is unnecessary to determine eligibility and benefits amounts" by virtue of the August 27, 1998 order. The district court merely clarified that the existing prohibition applied to the specific facts presented, and thus "merely restate[d] [the parties'] relationship in new terms." Roberts, 998 F.2d at 827 (quotation omitted). This did not constitute a substantial change in the terms and force of the injunction. See Mikel, 951 F.2d at 169.[6]

---

[6] We so hold despite the possibility that the 2008 order subjects HSD to contempt for the first time. An injunction that fails to comply with Rule 65(d) may not be enforced by way of contempt sanctions. See Reliance Ins. Co. v. Mast Constr. Co., 84 F.3d 372, 376 (10th Cir. 1996) (because order "failed to meet the requirements of Rule 65(d) . . . [it] was invalid and cannot provide the basis for a compensatory civil contempt action"). If the order approving the MSA did not meet Rule 65(d)'s requirements, a violation of its terms could not lead to contempt. See id. The June 4, 2008 order, however, does not appear to suffer the potential infirmities of the court's prior injunction; it does not attempt to incorporate any other document by reference. Accordingly, it is possible that the 2008 order is enforceable through the contempt power even if the 1988 order was not.

At first blush, this contingency suggests that the new order might have changed the "force of the injunction." Pimentel, 477 F.3d at 1154 (quotation omitted). But to constitute a modification rather than a clarification, our precedent requires that an order "substantially change[] the terms and force of the injunction." Id. (quotation omitted, emphasis added). HSD has not shown that any of the terms of the 1988 injunction were substantially changed, thus failing to satisfy this conjunctive test.

We recognize this may appear to produce a strange result: a subsequent injunction could be enforceable by contempt without "modifying" a prior injunction that did not carry the contempt power. Yet we face a dichotomous choice: modification or clarification/enforcement. An injunction can be invalid under Rule 65(d) precisely because its incorporation of another document renders it insufficiently clear. See Schmidt, 414 U.S. at 476 (Rule 65(d) "was designed to

(continued...)

-21-

HSD argues that the district court erred in applying the terms of the August 27, 1998 order, but that issue is not subject to plenary review in this court. "Although gross or blatant misinterpretations of the earlier injunction can substantially alter the legal relationship of the parties," our review for such misinterpretation is highly circumscribed. Pimentel, 477 F.3d at 1154. "To plunge into the details [of a past injunction and the order on appeal] would collapse the jurisdictional inquiry into a decision on the merits, thwarting the

[6](...continued)
prevent uncertainty and confusion on the part of those faced with injunctive orders"). Correcting such a defect in a subsequent order thus clarifies but does not modify. A hypothetical may illustrate this point. Consider an injunction that requires the parties to comply with a referenced—but unattached—settlement agreement. Such an injunction would clearly violate Rule 65(d). If the district court later recognized its mistake and entered a new injunction that included the text of the settlement agreement, one would be hard-pressed to describe the new order as a modification rather than a clarification even though the first order did not carry contempt power and the second did.

This result comports with the goals of the clarification exception. Section 1292(a) is "not intended to allow litigants to circumvent by the filing of repetitive motions the time limitation for taking appeals." Buckhanon v. Percy, 708 F.2d 1209, 1212 (7th Cir. 1983). If an injunction is insufficiently specific or otherwise non-compliant with Rule 65(d), an aggrieved party should appeal within the time frames set out in Federal Rule of Appellate Procedure 4. Permitting such a party to appeal after a district court cures its initial error would be a bizarre result. Indeed, it would encourage "sandbagging." If, on the other hand, a party has a substantive dispute with continued enforcement of an injunction, that party can move to dissolve the injunction under Rule 60(b). Whether granted or denied by the district court, a ruling on such a motion would be subject to appeal. See § 1292(a)(1) (granting courts of appeals jurisdiction to review orders dissolving and refusing to dissolve injunctions).

purpose of § 1292(a)(1)." <u>S. Ute Indian Tribe v. Leavitt</u>, 564 F.3d 1198, 1209 (10th Cir. 2009) (quotation omitted). Accordingly, we will treat an order interpreting a prior injunction as a modification only if it constitutes "a gross or blatant misinterpretation of the original injunction." <u>Id.</u> (quotation omitted). We discern no such error here.

We conclude that the order approving the MSA was an injunction, and that the court's June 4, 2008 order merely interpreted and clarified, without modifying, that existing injunction. <u>See</u> <u>Pimentel</u>, 477 F.3d at 1154. Accordingly, we lack appellate jurisdiction to review the latter order.

## III

Because we lack jurisdiction, we **DISMISS** both interlocutory appeals.