NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0276n.06
Filed: April 12, 2005

No. 05-5202

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MICHAEL ROSEN, et al.,             )
                                     )
      Plaintiffs-Appellees,         )
                                     )
SANFORD BLOCH, MARK LEVINE,   )   ON APPEAL FROM THE UNITED
                                     )   STATES DISTRICT COURT FOR THE
      Plaintiffs-Intervenors-Appellees.  )   MIDDLE DISTRICT OF TENNESSEE
                                     )
v.                                )
                                     )
M.D. GOETZ, JR., Commissioner, Tennessee
Department of Finance and Administration,

      Defendant-Appellant.

Before: COLE and SUTTON, Circuit Judges; ZATKOFF, District Judge.[*]

PER CURIAM. This case concerns a dispute among three parties: (1) the State of Tennessee, which is responsible for overseeing Tennessee's Medicaid program, known as TennCare; (2) the plaintiffs, who represent all individuals enrolled in TennCare; and (3) the plaintiffs-intervenors, who represent roughly 323,000 TennCare beneficiaries threatened with permanent loss of their eligibility for health care coverage if the State proceeds with a plan to disenroll certain categories of TennCare beneficiaries. At issue is a consent decree entered into between the plaintiffs

_____

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

and the State regarding Tennessee's implementation of the federal Medicaid program and, more specifically, whether the district court's orders of January 12, 2005, and January 28, 2005, impermissibly modified the consent decree to restrict the State's substantive policy choices in altering the TennCare program. After expediting the appeal, after reviewing the briefs, after hearing oral argument on April 8, 2005, and after considering the nature of the potential harms to each set of litigants, we reverse the January 12 and 28 orders and remand the case to the district court for further proceedings consistent with this opinion.

In 1998, plaintiffs initiated this lawsuit under 42 U.S.C. § 1983 against the Tennessee Commissioner of Finance and Administration, arguing that the State had violated the Due Process Clause of the Fourteenth Amendment and Medicaid regulations in the course of disenrolling beneficiaries. *See Rosen v. Tennessee Comm'n of Fin. & Admin.*, 288 F.3d 918, 922 (6th Cir. 2002). After several years of litigation, the plaintiff class and the State settled the dispute and agreed to a consent decree. Of the provisions memorialized in that agreement, the only operative one today

> enjoin[s the State] from terminating, reducing or suspending the TennCare coverage of members of the plaintiff class who are enrolled in the TennCare program, without affording such individuals notice and an opportunity for a hearing in accordance with 42 C.F.R. Part 431, Subpart E.

On January 12, 2005, two days after the State announced plans to remedy a significant budgetary shortfall by reducing enrollment in the TennCare program, the district court *sua sponte* entered an order addressing whether Tennessee's proposed modifications to the TennCare program abridged the State's duties under the consent decree. On January 28, 2005, in the face of a motion for reconsideration by the State, the district court affirmed and elaborated upon its January 12 order.

Through these orders, the district court scheduled a hearing for March 28, 2005, in which it planned to determine whether the State satisfies the standards for modifying injunctions under *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367 (1992).

In its January 12 order, the district court commented upon both procedural and substantive guarantees of the consent decree and indicated that "TennCare enrollees and applicants have legally protected interests in TennCare benefits that are protected by the Due Process Clause of the Fourteenth Amendment." JA 117. TennCare benefits, according to the district court, "were conferred by [the] parties' settlement agreement and consent decree." JA 118. And the court "discern[ed] substantial modifications of the parties' settlement agreement" in Tennessee's proposal to disenroll TennCare beneficiaries. JA 120. As a result, the court informed the parties that it would hold an evidentiary hearing on March 28 to address the following issues:

> (1) whether the Defendant has a historical record of good faith compliance with the consent decree; (2) whether the State's proposed changes to the TennCare program violate federal law and deprive the class of a benefit conferred by the Agreed Order; (3) whether the parties bargained in good faith about these proposed modifications; (4) whether reasonable alternatives were adequately explored to preserve the benefits conferred by the Agreed Order; (5) whether the proposed modifications are "suitably tailored to the changed circumstances"; and (6) any other issues raised by the parties.

JA 120–21. The court also notified the State that it "expects that pending the conclusion of the hearing and the Court's ruling thereafter, that the State will not take any steps to effect any modification of the existing TennCare program that requires prior compliance with the Supreme Court and Sixth Circuit precedents and approval of this Court." JA 121.

The district court reaffirmed this order on January 28. In doing so, it rejected the State's argument that the consent decree imposed only procedural limitations on the State's management of the TennCare program (*e.g.*, requiring notice of disenrollment decisions), not substantive ones (*e.g.*, limiting whom the State may disenroll).

The State appealed both orders as modifications of the injunction contained in the consent decree. During the pendency of the appeal, the district court has issued several additional orders and has proceeded with a hearing in accordance with its January orders, all of which indicate that the district court believes that the substance of the State's TennCare policy choices (as well as the procedures used to implement those policy choices) are within the purview of its authority. On February 25, 2005, for example, the district court advised the parties that the March hearing would be used to discuss:

> a. The use of the state medical schools to provide medical services to TennCare members and/or experimental medical treatment;
>
> b. the use of competitive bidding for exclusive contracts for a period of years with health care providers and/or drug companies, at retail or wholesale, to control costs of the TennCare program and to benefit county and local governments;
>
> c. the use of cooperative buying arrangements to lower the costs of prescription drugs and medications . . .;
>
> d. legislation using the Tennessee Insurance Guaranty Association Act as a model, to require health insurance companies to contribute a fee to assist in funding for medical services to uninsurables . . .;
>
> e. based on prior litigation in this Court, consideration of the potential of the pharmacy departments at the state's medical schools to provide medications for TennCare members; and
>
> f. the creation of a transition fund for members whose serious medical needs exceed the resources of a modified TennCare plan.

D. Ct. Op. of Feb. 25, 2005, at 2. And on March 17, 2005, the district court explained: "As I said earlier in two opinions, there is a substantive interest as well as a procedural interest in this case." Trans. of Mar. 17 Hearing, at 17.

At oral argument, the parties informed us that the district court had concluded the *Rufo* hearing. Over the course of the six days of this hearing, the district court dedicated four days to the substantive provisions of the State's plan to modify TennCare and two days reviewing procedural policies. All parties agreed that they prefer that the district court complete its review of the consent decree's procedural guarantees and issue an opinion ruling on their disagreements with respect to procedure.

Before analyzing the merits, we must determine whether we have jurisdiction over this interlocutory appeal. Tennessee claims that we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), which provides that parties may appeal "[i]nterlocutory orders of the district courts of the United States . . . modifying . . . injunctions." Plaintiffs disagree and argue that the State cannot meet the standards set out by the Supreme Court in *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981), to perfect an interlocutory appeal.

Specifically, in *Carson*, the Supreme Court allowed appellate review of interlocutory orders that (1) have the "practical effect" of modifying a consent decree, (2) result in "a 'serious, perhaps irreparable, consequence,'" and (3) can "be 'effectually challenged' only by immediate appeal." *Id.* The Supreme Court recognized that interlocutory appeals must be a rare exception to the final-

judgment rule, because otherwise, the "general congressional policy against piecemeal review will preclude interlocutory appeal." *Id.* We believe that this case is representative of an exceptional circumstance that warrants interlocutory review.

With respect to the first *Carson* prong, plaintiffs have conceded that "[t]o the extent that the District Court's comments indicated that portions of the January Orders require court review of the State's policy decision to terminate TennCare benefits, they have the 'practical effect' of modifying the Agreed Order, because that consent decree did not previously contain such a requirement." *See* Plaintiffs' Response of Mar. 22, 2005, at 7. In other words, the district court modified the consent decree when it read substantive guarantees into it.

In addressing whether this modification has "serious, perhaps irreparable, consequence[s]," the State notes that one day of delay costs it more than $1 million and plaintiff-intervenors fear that this dramatic expense will result in the removal of more individuals from the rolls of TennCare. While the loss of money alone in a damages action is rarely sufficient to demonstrate irreparable harm, in this case the loss of substantial amounts of money combined with permanent benefit loss creates the kind of irreparable harm to which the Supreme Court referred in *Carson*.

Finally, in concluding that appellate jurisdiction is triggered, we believe that the district court's January orders are best addressed by immediate appeal. We have no indication of a date by which the district court will issue its opinion. Given the parties' agreement that time is of the

essence and given plaintiffs' inability to identify any harm to them by an immediate appeal, an immediate appeal is appropriate.

Turning to the merits, it is now clear that all three parties share considerable common ground regarding the legal questions presented by the appeal. *First*, the parties agree that the consent decree bars the State from disenrolling TennCare beneficiaries "without affording such individuals notice and an opportunity for a hearing" in accordance with the applicable federal Medicaid statute. *Second*, the parties agree that the consent decree does not affect the State's substantive policy choices regarding who does and who does not receive TennCare benefits and regarding whether the State may disenroll certain TennCare beneficiaries. *Third*, no one disagrees that Tennessee faces serious budgetary issues; that the TennCare program's expenses during fiscal year 2006 will increase by $650 million in state funds, a figure exceeding the State's growth in total revenue by approximately $325 million, *see* Tennessee Br. at 2; and that this shortfall threatens to leave the Tennessee budget in the red, which violates the Tennessee Constitution's requirement that the State maintain a balanced budget, *see* Tenn. Const. art. II, § 24.

*Fourth*, the parties agree that time is of the essence in resolving how, when and whether the State resolves its fiscal challenges by modifying the TennCare program. Neither the State nor the plaintiffs, for example, dispute the concern raised by the plaintiffs-intervenors (who represent the roughly 323,000 who would be disenrolled under the current proposed TennCare modification) that delay in implementing the State's TennCare modifications likely will increase rather than diminish the number of TennCare beneficiaries that are disenrolled.

*Finally*, and most critically, to the extent the district court has reviewed substantive provisions of TennCare, the parties agree that the district court has exceeded the scope of its authority in this case. In *sua sponte* preventing the State from making substantive policy changes to the TennCare program, the district court has exercised authority that the consent decree does not give him. While the consent decree, as the State concedes, gives the district court authority to ensure that any disenrollment decisions made by the State comply with the procedural requirements laid out in the consent decree and the relevant Medicaid statute, that authority does not allow him to enjoin, inquire into or otherwise assess the State's substantive policy choices of who should or should not be disenrolled. (The State's ability to reduce benefits, as opposed to enrollment, is limited by a consent decree in another class-action lawsuit, *Grier v. Goetz*, No. 79-3107 (M.D. Tenn.), and a hearing to modify the substantive limitations of that decree has been scheduled for May 9, 2005.)

Under these circumstances, we reverse the district court's January 12 and 28 orders, which are premised on a mistaken reading of the consent decree, circuit precedent, and federal law and which do not permit the district court to impose substantive policy limitations on the State in its ongoing management of the TennCare program.

In ultimately reversing the district court's January 12 and 28 orders, we do so at least in part in reliance on the State's representation at oral argument that it will not issue the proposed notices that are properly at issue in the proceedings below for at least two weeks, and its further representation after argument that it will provide plaintiffs and the plaintiffs-intervenors with notice

of at least two business days before issuing any disenrollment notices so that they may have an

opportunity to seek preliminary injunctive relief from the district court.