**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 21, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

ROSA DITUCCI, an individual; STEVEN R. LAROZA, an individual; DEBRA A. LAROZA, an individual; BRUCE I. ROSE, an individual; MAUREEN A. ROSE, an individual; SANFORD ROBERTS, an individual; HELAINE B. ROBERTS, an individual; RUSSELL E. HERTRICH, an individual; FRED JACOB, an individual; EDWARD A. HENNESSEY, an individual; PAMELA A. CAPLINGER, an individual, on behalf of the estate of James M. Caplinger, Jr.; RUSSELL E. HERTRICH REVOCABLE TRUST; SANFORD ROBERTS REVOCABLE TRUST; HELAINE B. ROBERTS REVOCABLE TRUST; FRED JACOB LIVING TRUST; EDWARD A. HENNESSEY 2001 REVOCABLE LIVING TRUST; CAMAC, a Kansas corporation; BLUSH PROPERTY, a Florida limited liability company,

     Plaintiffs - Appellees,

v.

WILLIAM BOWSER, an individual; GABRIEL MANAGEMENT CORPORATION, a Utah corporation,

     Defendants - Appellants,

and

CHRISTOPHER J. ASHBY, an individual; JOHN D. HAMRICK, an individual;

No. 19-4107

JORDAN S. NELSON, an individual;
SCOTT B. LEFEVRE, an individual;
CHRIS BROWN, an individual; SCOTT
RUTHERFORD, an individual;
ROCKWELL DEBT FREE PROPERTIES,
a Utah corporation; ROCKWELL TIC, a
Utah corporation; NOAH
CORPORATION, a Utah corporation;
EDMUND AND WHEELER, a New
Hampshire corporation; ROCKWELL
INDIANAPOLIS, a Utah limited liability
company; LEFEVRE MANAGEMENT, a
Utah corporation, d/b/a Cadence Property
Advisors, d/b/a Cadence Property
Administrators,

      Defendants.

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:19-CV-00277-TC-PMW)**
_____

Daniel K. Brough, Bennett Tueller Johnson & Deere, Salt Lake City, UT for Defendants-Appellants.

Wesley Felix, Deiss Law PC, Salt Lake City, UT (John Robinson Jr., Brenda Weinberg, Deiss Law PC, Salt Lake City, UT on the briefs) for Plaintiffs-Appellees.
_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Defendant William Bowser has filed a notice of appeal challenging the district court's interlocutory order forbidding him from transferring or encumbering a residence he was arranging to purchase and requiring him to deposit almost $350,000 with the

2

court. We dismiss the appeal for lack of appellate jurisdiction. The district court characterized its order as a prejudgment writ of attachment, which is unappealable. And although we might agree with Mr. Bowser that the characterization was incorrect, we disagree that the order should be characterized as an injunction that he would have a right to appeal under 28 U.S.C. § 1292(a)(1). We decline to treat the order as the equivalent of an injunction because Mr. Bowser has not shown that it "might have a serious, perhaps irreparable, consequence." *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981) (internal quotation marks omitted).

## I.   BACKGROUND

### A.   Factual Background[1]

Defendant Noah Corporation is a developer and operator of events-center properties, hosting weddings and other events at 42 venues across the country. Mr. Bowser is the founder and president of Noah. He is also the president of codefendant Gabriel Management Corporation, which is wholly owned by Noah and functions as Noah's "development arm." *DiTucci v. Ashby*, No. 2:19-cv-277-TC, 2019 WL 2579268, at *2 (D. Utah June 24, 2019). Initially, Noah handled internally the financing and acquisition of its properties. But after completing development of about 15 venues, Noah moved to a different model in which codefendants Rockwell Debt Free Properties, Inc. and Rockwell TIC, Inc. (collectively, Rockwell) would acquire parcels of land suitable

---

[1] Our recitation of the factual background is based largely on the district court's findings in resolving Plaintiffs' motion for a prejudgment writ of attachment. Mr. Bowser does not dispute those findings for the purpose of this appeal.

for construction of new events centers. Rockwell would then lease the land to Noah or one of its subsidiaries and solicit investors to purchase tenancy-in-common (TIC) interests in the land. Once the property interests were sold to investors, Rockwell would assign them its rights under the lease with Noah. After taking a substantial commission from the investors' funds, Rockwell would disburse the remaining money to Noah or Gabriel in the form of construction "draws" for the purpose of building the events center.

Plaintiffs collectively invested $4.9 million with Rockwell, receiving in return TIC interests in an unimproved parcel of land in Carmel, Indiana. They allege that they were unaware that the land was unimproved, claiming that they understood construction of the events center to be complete or nearly complete at the time of their investment. Following Rockwell's sale of the TIC interests and assignment to Plaintiffs of the lease with Noah, Gabriel began making "draws" totaling nearly $5 million from the money (held by Rockwell) that Plaintiffs had invested, purportedly for construction items such as roofs, doors, windows, and interior finishes. In fact, little of that money went toward work on the Carmel property. It appears that Mr. Bowser diverted some $3 million to fund work on other Noah buildings that were struggling financially—in Mr. Bowser's own words, "robbing Peter to pay Paul." *Id.* at *3 (internal quotation marks omitted). Upon learning of the diversion of funds, Plaintiffs sued Mr. Bowser, Noah, Gabriel, Rockwell, and a handful of other related parties in the United States District Court for the District of Utah, asserting a number of claims, including fraud, breach of contract, breach of fiduciary duty, and unjust enrichment. A little more than a month later, Noah filed for bankruptcy.

4

**B.     Procedural Background**

Soon after filing suit, Plaintiffs discovered that Mr. Bowser was selling his $2.4 million residence in Park City, Utah (the Glenwild Property).  Fearing that the sale would deprive them of a remedy even if they obtained a favorable judgment, Plaintiffs filed an emergency motion with the district court, seeking an *ex parte* prejudgment writ attaching the proceeds of the pending sale.  The court denied the request for *ex parte* relief but held an expedited hearing on the motion, followed by additional briefing and an evidentiary hearing.  In the interim, with the parties' consent the court issued a temporary order that allowed Mr. Bowser to sell the Glenwild Property, to use a portion of the proceeds for a down payment on a townhome he was in the process of purchasing (the Townhome), and to pay off two secured creditors; but it barred him from spending the remaining proceeds.  After the evidentiary hearing the court granted Plaintiffs' motion, purporting to issue "a prejudgment writ of attachment on the net proceeds of the sale of the Glenwild Property." *Id.* at *9.  The court's order (the Order) forbade Mr. Bowser from transferring or otherwise encumbering the Townhome and ordered him to deposit the remaining $347,821.48 with the court.  *See id*.

Mr. Bowser filed a timely notice of appeal.  He argues that the Order was improper both because the district court did not comply with Utah's procedures for writs of attachment and because Plaintiffs failed to make the requisite showings for a writ of attachment.  But after considering supplemental briefing that we requested regarding our appellate jurisdiction, we hold that we cannot consider those arguments at this time.

## II. DISCUSSION

### A. Legal Framework

In general, the appellate jurisdiction of the courts of appeals is governed by the final-judgment rule of 28 U.S.C. § 1291, which extends that jurisdiction to "final decisions" of the district courts. We have defined a *final decision* as one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1270 (10th Cir. 2010) (internal quotation marks omitted). In 28 U.S.C. § 1292, however, Congress has provided for appellate review of certain interlocutory decisions. The provision of that section relevant to this appeal is § 1292(a)(1), which permits interlocutory appeal of orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions."[2]

If the district court denotes its order as the grant or denial of an injunction, we treat it as coming within § 1292(a)(1). *See MAI Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978, 980–82 (10th Cir. 1992); 19 George C. Pratt, *Moore's Federal Practice - Civil* § 203.10[2][a] (2020) (Moore's) ("[T]he statute clearly applies to orders that formally grant injunctive relief."). But even if the order is not so denoted, it may still come under that provision. We may look beyond the label assigned by the trial court and "consider the substance rather than the form of the motion and order." *New Mexico v. Trujillo*, 813

---

[2] Mr. Bowser does not argue that the district court's order satisfies the collateral-order doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), which would give this court jurisdiction under 28 U.S.C. § 1291.

F.3d 1308, 1319 (10th Cir. 2016). This circuit has "define[d] an injunction broadly as 'an equitable decree compelling obedience under the threat of contempt.'" *Id.* at 1318 (quoting *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 75 (1967)). Additional factors that can support classification as an injunction include: "if [the order] is directed to one or more of the parties, is coercive and equitable in nature, is enforceable by contempt, and grants at least some of the relief that is sought in the litigation." 19 Moore's § 203.10[2][a]; *see Bogosian v. Woloohojian Realty Corp.*, 923 F.2d 898, 900–01 (1st Cir. 1991) (treating an order as an injunction when it was "directed to a party," it "require[d] that party to take action," it was "more than minimally coercive," it had "serious consequences," it was "enforceable through contempt," it was "not simply related to court procedures," and " "[i]ts subject matter . . . either itself consist[ed] of, or act[ed] as a substitute for, in whole or in part, the substantive relief" sought).

Some orders that may appear to satisfy that test are nevertheless not appealable under § 1292(a)(1). Relevant here, writs of attachment (or denials of requests for writs of attachment) are not appealable as injunctions. Although this circuit has not yet had occasion to address the issue, other circuits that have addressed it and leading treatises all agree that true writs of attachment do not fall under § 1292(a)(1). As then-Chief Judge Breyer explained: "For historical reasons, court ordered 'attachments,' even where coercive and designed to protect ultimate relief, are typically considered to be 'legal,' not 'equitable,' in nature, and therefore are not 'injunctions' for § 1292(a)(1) purposes." *Bogosian*, 923 F.2d at 901; *see also Fin. Servs., Inc. v. Ferrandina*, 474 F.2d 743, 745–46

7

(2d Cir. 1973) (order denying motion to vacate writ of attachment is not appealable under § 1292(a)(1)); *Am. Mortgage Corp. v. First Nat'l Mortgage Co.*, 345 F.2d 527, 528 (7th Cir. 1965) ("The distinction between attachments and injunctions has been so long recognized that we are convinced that Congress would have provided for interlocutory appeals in cases such as this had it deemed such appeals desirable."); 19 Moore's § 203.10[6][e] ("An order of attachment is not an appealable injunction."); 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3922.3 (3d ed. updated 2020) ("Enforcement of such traditional security devices as attachment and replevin ordinarily is thought not to involve an injunction within the meaning of § 1292(a)(1). This result seems correct with respect to established traditional devices that do not command action beyond preservation or surrender of property.").

In addition, the Supreme Court, recognizing that "§ 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule," has "construed the statute narrowly to ensure that appeal as of right under § 1292(a)(1) will be available only in circumstances where an appeal will further the statutory purpose of permitting litigants to effectually challenge interlocutory orders of *serious, perhaps irreparable, consequence*." *Carson*, 450 U.S. at 84 (emphasis added) (internal quotation marks omitted); *see United States ex rel. Lutz v. United States*, 853 F.3d 131, 139 (4th Cir. 2017) ("Most court orders are injunctions at some level of generality, but Congress did not envision that every interlocutory order restraining a party's actions could be appealed under § 1292(a)(1)."). That is, to appeal under § 1292(a)(1) an interlocutory order not expressly denominated as an injunction, a party must show that the order (1) "threaten[s] a 'serious, perhaps

irreparable, consequence,'" and (2) "[can] be 'effectually challenged' only by immediate appeal." *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1185 (10th Cir. 1999) (quoting *Carson*, 450 U.S. at 84); *accord Trujillo*, 813 F.3d at 1319 n.6; *Miller v. Basic Research, LLC*, 750 F.3d 1173, 1176 (10th Cir. 2014).

### B.     Application

The Order prohibited Mr. Bowser from transferring or encumbering the Townhome he was arranging to purchase and ordered him to deposit with the court any proceeds from the sale of his prior home not used to pay off liens or purchase the Townhome.  To determine whether the Order is appealable, we first examine whether it is a writ of attachment.  Having some doubt on that score, we then turn to whether the Order "might have a serious, perhaps irreparable, consequence." *Carson*, 450 U.S. at 84 (internal quotation marks omitted).  Concluding that the Order does not satisfy the *Carson* test, we hold that the Order is not appealable and dismiss the appeal.

### 1.     Was the Order a Writ of Attachment?

Plaintiffs asked the district court to issue a writ of attachment, and the court responded favorably, entitling its order:  "Order and Memorandum Decision Granting Prejudgment Writ of Attachment." *DiTucci*, 2019 WL 2579268, at *1.  Its authority for issuing a writ was Fed. R. Civ. P. 64(a), which makes available to the federal district court "every remedy . . . that, under the law of the state where the court is located, provides for seizing . . . property to secure satisfaction of the potential judgment."  These remedies include "attachment" and "other corresponding or equivalent remedies"— "however designated." Fed. R. Civ. P. 64(b).  An applicable federal statute could

override state law, *see* Fed. R. Civ. P. 64(a) ("[A] federal statute governs to the extent it applies."); but no such federal statute has been identified by the parties.

The district court therefore turned to Utah Rules of Civil Procedure 64A ("Prejudgment Writs in General") and 64C ("Writ of Attachment"). We are not certain, however, that the Order constitutes a writ under Utah law. Utah writs of attachment are governed not only by Rules 64A and 64C but also by Utah Rule of Civil Procedure 64, entitled "Writs in General." *See Aequitas Enters., LLC v. Interstate Inv. Group, LLC*, 267 P.3d 923, 926–27 (Utah 2011). And some features of the Order appear contrary to the requirements of Rule 64. First, the Order was issued by the district court, rather than by "the clerk of the court." Utah R. Civ. P. 64(d)(1). Second, it was directed to Mr. Bowser, as opposed to a sheriff or other officer. *See id.* Finally, although Utah Rule 64(c)(3) states that the "court may forbid any person from transferring, disposing or interfering with the property," it is not clear to us that this would authorize the court to require Mr. Bowser to deposit the remaining sale proceeds with the court.[3]

We reserve for another day, however, whether a writ like the Order constitutes a writ of attachment under Utah law for purposes of Fed. R. Civ. P. 64(a). We must dismiss this appeal regardless. If the Order is a writ of attachment, then it is

---

[3] We also note that if what is called a writ of attachment under a State's law departs too far from the traditional notion of such a writ, a federal appellate court may determine that a writ could be treated as an injunction under 28 U.S.C. § 1292(a)(1). *Cf. Bogosian*, 923 F.2d at 902 ("We conclude that, if an order is, in all other relevant respects an appealable injunction, the fact that it *resembles*, but is not, technically speaking, an attachment will not normally make a critical difference.").

unappealable.  If it is not, then we must look to the *Carson* factors and, as we proceed to explain, those factors confirm unappealability.

## 2.    The *Carson* Factors

Proceeding on the assumption that the Order was not a writ of attachment, and even assuming that the Order has earmarks of an injunction, we then must examine whether it satisfies the requirements of *Carson* for being an appealable interlocutory injunction under 28 U.S.C. § 1292(a)(1).  The critical questions are whether the Order threatens a "serious, perhaps irreparable, consequence," and "can be effectually challenged only by immediate appeal." *Carson*, 450 U.S. at 84.

We hold that Mr. Bowser has failed to show that the Order threatened serious, perhaps irreparable, consequences by restricting him from selling or placing liens on the Townhome or requiring him to deposit with the court the sum of about $350,000 from the sale of his home not needed to pay off liens on that home or purchase the Townhome. His inability to use the cash or raise money from his present home may have financial consequences, but he has not shown that those consequences are irreparable—that is, that he cannot be adequately compensated if he ultimately prevails.

As a general rule, a temporary restraint on the use of passive assets does not threaten irreparable injury.  In affirming the denial of a preliminary injunction on the ground that the plaintiff had not shown the requisite irreparable injury, we said that it is "well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm [because] such losses are compensable by monetary damages." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (internal quotation marks

11

omitted) (plaintiff terminated as chair of medical department had not shown that pending a judgment he could suffer "actual or significant risk of loss of prestige, academic reputation or professional opportunities that cannot be remedied by money damages"); *accord N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1250 (10th Cir. 2017) (to establish irreparable harm, "a plaintiff must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages" (internal quotation marks omitted)). We have not had occasion to apply that proposition in the *Carson* context but other circuits have. *See First Eagle SoGen Funds, Inc. v. Bank for Int'l Settlements*, 252 F.3d 604, 607 (2d Cir. 2001) (denial of temporary restraining order to halt a bank's buyback of publicly held shares did not threaten "irreparable harm . . . , much less harm that can only be avoided by an interlocutory appeal," where "any injury suffered . . . can be adequately redressed by monetary damages"); *Abish v. Nw. Nat'l Ins. Co*., 924 F.2d 448, 453–54 (2d Cir. 1991) ("The nature of the relief sought being monetary compensation, there is no reason why Northwestern cannot be made whole upon resolution of the merits. We have often held that irreparable injury means injury for which a monetary award cannot be adequate compensation." (internal quotation marks omitted)); *In re Deepwater Horizon*, 793 F.3d 479, 492 (5th Cir. 2015) (would-be appellant did not face irreparable harm as a result of district-court order delaying its access to claim-specific information relating to a mass-tort-settlement agreement because "any harm here is adequately reparable through the multiple avenues . . . to pursue awards obtained fraudulently"); *Middleby Corp. v. Hussmann Corp.*, 962 F.2d 614, 616 (7th Cir. 1992) (delay in granting monetary relief

12

does not create irreparable injury required for appealability under 28 U.S.C. § 1292(a)(1) or Federal Arbitration Act, 9 U.S.C. § 16(a)(1)(D); "[i]nterest . . . will compensate . . . for the time value of the money"); *cf. Rosen v. Goetz*, 129 F. App'x 167, 171 (6th Cir. 2005) (per curiam) (although "the loss of money alone in a damages action is rarely sufficient to demonstrate irreparable harm," order that could cause loss of more than $1 million per day *and* result in permanent removal of Tennessee residents from the rolls of the state's Medicaid program "creates the kind of irreparable harm to which the Supreme Court referred in *Carson*").

Mr. Bowser contends that he does face irreparable injury. Regarding the restrictions on the Townhome, he contends that "real property interests are unique and especially support findings of irreparable harm in the event of their loss." Aplt. Jurisdictional Br. at 15. But he retains the right to live in and enjoy the Townhome under the Order; he is merely prohibited from "transfer[ring] the Townhome, or any interest in the Townhome." *DiTucci*, 2019 WL 2579268, at *9. His reliance on *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009), is misplaced. In that case we held that the district court properly determined that denying the drilling company its title to the real property at issue would cause irreparable injury because denial of record title would prevent the company from "participat[ing] in the everyday operations of its own interests." *Id.* at 1211. We explained that the "properties are income producing, and realizing their income potential depends upon active management of the properties. That makes potential damages most difficult to prove, if not practically unquantifiable." *Id.* In this case, in contrast, the real estate is a home, whose central purpose is to provide

13

living accommodations, and Mr. Bowser is free to live there as he wishes. It is not a piece of real estate actively managed as a business.

Mr. Bowser also relies on *In re Feit & Drexler*, 760 F.2d 406, 412 (2d Cir. 1985), as authority that he faces irreparable consequences because the district court's order renders him "unable to conduct the affairs of [his] life without substantial constraint." But we do not read that opinion so broadly as to regard *any* financial constraint as creating irreparable injury. *See Vera v. Republic of Cuba*, 651 F. App'x 22, 26 (2d Cir. 2016) (summary order) (construing *Feit* as limited to court orders requiring a party to deliver property from out-of-state). Mr. Bowser must point to a serious, life-changing constraint, something beyond an inconvenience or reduced standard of living.

Mr. Bowser does claim one constraint that could present a serious irreparable injury. He contends that the Order will preclude him from obtaining legal representation in this dispute. *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1225 (10th Cir. 2009) (loss of court-ordered advances being used to fund defense in criminal prosecution satisfied "irreparable injury" requirement for injunctive relief). That issue, however, is not properly before us. When the district court issued its Order in June 2019, financing the litigation did not seem problematic because Mr. Bowser and his wife were continuing to draw combined annual salaries of approximately $259,000 from Noah and Gabriel under the Chapter 11 restructuring plan approved by the bankruptcy trustee. It is only after Mr. Bowser submitted his opening brief on appeal that Noah's bankruptcy proceedings were converted from Chapter 11 to Chapter 7, apparently cutting off Mr. and Mrs. Bowsers' source of income. Hence, the district court has not had an opportunity to

14

consider any impact from the Chapter 7 conversion, and that is where the matter should be explored in the first instance. *See Lutz*, 853 F.3d at 139 n.10 (dismissing appeal under *Carson* for "failure to show any irreparable consequence" but noting that after remand the "parties may seek relief from the [district] court upon a satisfactory showing that the writs have hindered their ability to pay living expenses or legal fees").

On the record before us, we lack jurisdiction to hear Mr. Bowser's appeal. We express no view on the merits of his arguments regarding the propriety of the Order.

### III.    CONCLUSION

We **DISMISS** the appeal for lack of jurisdiction.