**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 30, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

---

ABIGAIL KNOWLTON; OSCAR
DANIEL LOPEZ-GARCIA;
MICHAELA BACA; TERRIANNE
SCAZZERO, individually and on
behalf of all others similarly situated,

    Plaintiffs - Appellees,

v.

KARI ARMIJO, Acting Secretary of
New Mexico Human Services
Department,

    Defendant - Appellant,

and

ZACHARY SCHANDLER,

    Defendant.

No. 23-2143
(D.C. No. 1:88-CV-00385-KG-JHR)
(D. N.M.)

---

**ORDER AND JUDGMENT\***

---

Before **CARSON**, **ROSSMAN**, and **FEDERICO**, Circuit Judges.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This interlocutory appeal arises from a long-running class action lawsuit challenging the state of New Mexico's administration of federal social benefits programs. Appellant New Mexico Human Services Department (HSD) seeks review of the district court's August 21, 2023 order denying its motion to dismiss. We must dismiss for lack of appellate jurisdiction.

## I

This case has a complex procedural history with which the parties are familiar. We briefly describe some of the facts relevant to the appeal before us.

## A

New Mexico participates in a comprehensive federal-state system of administering food, public-assistance, and medical programs to low-income individuals, households, and families. Aplt. App. at 56–57. HSD is the state agency designated to administer the food stamp, Aid to Families with Dependent Children (AFDC), and Medicaid programs in New Mexico. It must comply with the federal policies and procedures governing its participation. *See* Aplt. App. at 57 (citing federal laws and regulations governing New Mexico's administration of these programs[1]).

---

[1] *See* 7 U.S.C. § 2020(d), (e); 7 C.F.R. § 272.2 (2024); 42 U.S.C. §§ 601, 602; *Id.* §§ 1396, 1396a; 42 C.F.R. §§ 431.40–70 (2023).

In 1988, Ms. Debra Hatten-Gonzales filed a class action lawsuit in federal district court challenging HSD's compliance with federal law in administering benefits programs. She alleged, among other things, that HSD "failed to complete certification of and provide a food stamp allotment to plaintiff," "failed to provide AFDC and/or Medicaid benefits to plaintiff," and "failed to provide plaintiff with timely, adequate, written notice of its determination of plaintiff's eligibility for food stamps, AFDC, and/or Medicaid." Aplt. App. 67.

Certified in 1989, the class included "[a]ll present and future applicants to the federal food stamp program, Medicaid program, or [AFDC program] who have not or will not receive an eligibility determination or benefits under these programs from [HSD] within the time limits imposed by law." Aplt. App. at 75. The district court approved a settlement agreement in 1990. In 1998, the district court entered a modified settlement agreement. The parties entered and the district court approved the

operative consent decree[2]—the Second Revised Modified Settlement Agreement and Order—in 2018.[3]

## B

Litigation ensued, including in this court. *See, e.g.*, *Hatten-Gonzales* v. *Hyde*, 579 F.3d 1159, 1162–65 (10th Cir. 2009) (*Hatten-Gonzales I*) (describing more procedural history); *Hatten-Gonzales* v. *Earnest*, 688 F. App'x 586 (10th Cir. 2017) (*Hatten-Gonzalez II*); *Hatten-Gonzales* v. *Scrase*, No. 22-2115, 2023 WL 4881437 (10th Cir. Aug. 1, 2023) (*Hatten-Gonzales III*).

As relevant here, in 2005, Plaintiffs moved to enforce HSD's compliance with the consent decree. *Hatten-Gonzales I*, 579 F.3d at 1164. The district court granted Plaintiffs' motion. *Id.* HSD then moved to dismiss, citing "a jurisdictional question concerning the Plaintiffs' apparent lack of authority to continue monitoring [HSD's] compliance." *Id.* (alteration in original) (quoting Motion to Dismiss and Memeorandum [sic] in Support

---

[2] The operative agreement defines itself as a consent decree, and the parties refer to it as a consent decree, so we do as well. A consent decree is a court decree to which all parties have agreed. *Decree*, Black's Law Dictionary (12th ed. 2024).

[3] Section I of the operative consent decree contains definitions; Section II addresses the timely processing of applications; Section III addresses the correct processing of applications; and Section IV addresses case file reviews and other implementation requirements. *See* Aplt. App. at 78–90, 94–95.

at 1, *Hatten-Gonzalez* v. *Hyde*, No. 1:88-cv-00385-KG-JHR (D.N.M. July 9, 2007), ECF No. 340). The district court denied HSD's motion, and HSD appealed. *Id.* We dismissed the appeal for lack of appellate jurisdiction. *Id.* at 1167. "As a general matter," we explained, "we review only final decisions of the district courts," but the order there "did not end this enduring litigation." *Id.* at 1165–66 (citing 28 U.S.C. § 1291). Nor did the order fit into an exception for orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions," in part because "HSD did not request dissolution or modification of an injunction." *Id.* (quoting 28 U.S.C. § 1292(a)(1)).

In 2020, the district court modified the operative consent decree. In 2022, a special master—appointed to administer the decree—recommended case file review procedures. *See Hatten-Gonzales III*, 2023 WL 4881437, at *1. Both parties objected, and the district court overruled most of their objections. HSD again appealed, "seeking 'review of an interlocutory order modifying an injunction.'" *See id.* at *2 (quoting Aplt. Br. at 4, *Hatten-Gonzales III*, 2023 WL 4881437 (No. 22-2115)). Again, we dismissed the appeal for lack of appellate jurisdiction. *Id.* at *1, *3. The district "court did not change the consent decree's compliance mandates [or] enforcement mechanisms, or otherwise alter 'the command of the earlier injunction, relax its prohibitions, or release any respondent from its grip.'" *Id.* at *3

5

(quoting *Pimentel & Sons Guitar Makers, Inc.* v. *Pimentel*, 477 F.3d 1151, 1154 (10th Cir. 2007)). Litigation continued in the district court while *Hatten-Gonzalez III* was pending, because the district court certified as frivolous much of HSD's appeal.[4]

## C

We now arrive at the facts underlying HSD's latest appeal. In November 2022, HSD again moved to dismiss.[5] HSD raised arguments about "the non-existence of a viable plaintiff class," including that "the class injury . . . had been redressed" and that class counsel had not adequately communicated with class representatives. Aplt. App. at 119–23. HSD asked the district court to "grant the motion and enter an Order terminating the Consent Decree." Aplt. App. at 119. Weeks later, HSD filed a similarly reasoned motion to "relieve the Defendant" from the consent decree under

---

[4] A frivolity determination allows the district court to maintain jurisdiction during the pendency of an appeal. *See Stewart* v. *Donges*, 915 F.2d 572, 576 (10th Cir. 1990) ("Upon . . . an explicit finding that the claim raised on appeal was frivolous, the district 'court should not be held divested of jurisdiction.'" (quoting *United States* v. *Hines*, 689 F.2d 934, 937 (10th Cir. 1982))). According to the district court, HSD's appeal was "a delay tactic." Supp. App. at 312.

[5] HSD did not identify any particular federal rule as the basis for the motion, but its arguments seem grounded in Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b) (providing "a party may assert the following defense[] by motion: (1) lack of subject-matter jurisdiction").

Federal Rule of Civil Procedure 60(b)(6)—the catch-all provision for requesting relief from an order or judgment. Aplt. App. at 127–28.

The district court denied HSD's motions. HSD appealed the denial of its motion to dismiss, but not the denial of its Rule 60(b) motion. We ordered the parties to address "the jurisdictional basis for the appeal including whether the [motion-to-dismiss] order is appealable under 28 U.S.C. § 1292(a) or another statutory basis." Order at 1, *Knowlton* v. *Armijo*, No. 23-2143 (10th Cir. Sept. 21, 2023), ECF No. 13. The parties did so in their merits briefing. *See* Opening Br. at 3; Response Br. at 5–9; Reply Br. at 3–5. The district court again certified HSD's appeal as frivolous, reasoning it "evinces a pattern of dilatory tactics," including because Plaintiffs had recently filed a Motion to Enforce Compliance that HSD sought to avoid. *Knowlton* v. *Armijo*, No. 88-0385 KG/GBW, 2023 WL 7114676, at *3 (D.N.M. Oct. 27, 2023).

## II

HSD urges reversal, contending the district court lacks subject matter jurisdiction and "the case should be dismissed." Opening Br. at 2. According to HSD, the class lacks Article III standing. Opening Br. at 2, 9; *see* Opening Br. at 9 ("To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" (quoting *Monsanto Co.* v.

*Geertson Seed Farms*, 561 U.S. 139, 149 (2010))). HSD makes two arguments to this end. First, "the definition of the class contained in the 1989 class certification was fundamentally flawed," HSD insists, because "[a]llegations of possible future injury do not satisfy the requirements of Article III." Opening Br. at 8–11 (heading capitalization omitted) (quoting *Whitmore* v. *Arkansas*, 495 U.S. 149, 158 (1990)). Second, HSD argues the district court recognized "the class injury" as fully redressed when it modified the consent decree in 2020. *See* Opening Br. at 7, 11–14.

In addition to responding on the merits, Plaintiffs maintain we should not reach HSD's claims because we lack appellate jurisdiction. Response Br. at 5. We agree we lack jurisdiction.

## A

The appellant "bears the burden to establish appellate jurisdiction." *EEOC* v. *PJ Utah, LLC*, 822 F.3d 536, 542 n.7 (10th Cir. 2016). An appellant can do this "by demonstrating the finality of the challenged decision or [by] identifying a specific grant of jurisdiction." *C.W. ex rel. B.W.* v. *Denver Cnty. Sch. Dist. No. 1*, 994 F.3d 1215, 1220 (10th Cir. 2021) (quoting *Zen Magnets, LLC* v. *Consumer Prod. Safety Comm'n*, 968 F.3d 1156, 1164 (10th Cir. 2020)).

"In general, the appellate jurisdiction of the courts of appeals is governed by the final-judgment rule of 28 U.S.C. § 1291 . . . ." *DiTucci* v.

*Bowser*, 985 F.3d 804, 808 (10th Cir. 2021); *see* 28 U.S.C. § 1291 (extending jurisdiction to "appeals from all final decisions of the district courts of the United States"). Nobody contends the order on appeal—the denial of HSD's motion to dismiss—is a "final decision" under 28 U.S.C. § 1291. *See Decker* v. *IHC Hosps., Inc.*, 982 F.2d 433, 435 (10th Cir. 1992) ("In general, an order denying a motion to dismiss is not final because it 'ensures that litigation will continue in the District Court.'" (quoting *Gulfstream Aerospace Corp.* v. *Mayacamas Corp.*, 485 U.S. 271, 275 (1988))). To establish appellate jurisdiction, then, HSD must show the order on appeal falls within one of the "limited exception[s] to the final-judgment rule." *Hutchinson* v. *Pfeil*, 105 F.3d 566, 569 (10th Cir. 1997). HSD asserts two possible bases for appellate jurisdiction, but neither is availing.

## B

### 1

HSD first suggests we may always hear an appeal about a defect in the district court's subject matter jurisdiction. *See* Opening Br. at 3 ("[T]his Court has jurisdiction over this appeal to address the jurisdictional issue of standing because such an issue may be raised by the Court at any point in the litigation.") (citing *Buchwald* v. *Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 492 (10th Cir. 1998)). That is incorrect.

To be sure, "[s]tanding represents a jurisdictional requirement which remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc.* v. *Scheidler*, 510 U.S. 249, 255 (1994). But we cannot consider the district court's subject matter jurisdiction if *we* lack appellate jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). Accordingly, "the question of this Court's jurisdiction (i.e., our appellate jurisdiction) is *antecedent* to all other questions, including the question of the subject matter [jurisdiction] of the District Court." *In re Lang*, 414 F.3d 1191, 1195 (10th Cir. 2005) (quoting *Petroleos Mexicanos Refinacion* v. *M/T KING A (Ex–TBILISI),* 377 F.3d 329, 333 n.4 (3d Cir. 2004)); *see Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (we address jurisdiction "first, of this court, and then of the court from which the record comes" (quoting *Great S. Fire Proof Hotel Co.* v. *Jones*, 177 U.S. 449, 453 (1900)). We next consider—and reject—HSD's other argument for appellate jurisdiction.

**2**

As in its prior appeals, HSD invokes 28 U.S.C. § 1292(a)(1). Recall, § 1292(a)(1) authorizes appellate review of "orders . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or

10

modify injunctions." We previously recognized the consent decree in this case is effectively an injunction. *See Hatten-Gonzalez I*, 579 F.3d at 1168–70 (noting the 1998 consent decree "contain[s] mandatory language prohibiting the parties from engaging in certain activities and would appear to subject a non-compliant party to contempt"); *Hatten-Gonzalez III*, 2023 WL 4881437, at *1, *3 (recognizing the operative consent decree also serves as an injunction).

We have developed "two strands of analysis . . . for § 1292(a)(1) appeals." *Utah State Dep't of Health* v. *Kennecott Corp.*, 14 F.3d 1489, 1496 (10th Cir. 1994). First, a district court order "*expressly* granting or denying injunctive relief" is appealable. *Tri-State Generation & Transmission Ass'n, Inc.* v. *Shoshone River Power, Inc.*, 874 F.2d 1346, 1351 (10th Cir. 1989) (emphasis added). Here, the district court's order did not expressly or clearly address injunctive relief. *See* Aplt. App. at 147. And HSD does not appear to argue otherwise. *See* Reply Br. at 4 ("The key point is whether the granting of the motion would *effectively* end the litigation." (emphasis added)).[6]

---

[6] We have also said orders "ruling on *express motions* for injunctive relief" are appealable without a further showing. *MAI Basic Four, Inc.* v. *Basis, Inc.*, 962 F.2d 978, 982 (10th Cir. 1992) (emphasis added); *Utah State Dep't of Health* v. *Kennecott Corp.*, 14 F.3d 1489, 1496 (10th Cir. 1994) (emphasis added). We decline to read the single request to dissolve the

This case involves our second strand of analysis. Because the order on appeal does not expressly address injunctive relief, we use the *Carson* test to determine whether the order triggered § 1292(a)(1) by "effectively" refusing to dissolve an injunction.[7] *See Carson* v. *American Brands, Inc.*, 450 U.S. 79 (1981). In *Carson*, the Supreme Court held an order declining to enter a consent decree triggered review under § 1292(a)(1) when the order "did not in terms 'refus[e]' an 'injunctio[n],'" but the requested decree would have effectively "enjoined respondents from discriminating against black employees." *Id.* at 83–84 (alterations in original) (also listing other effects of the order). The Court went on: "For an interlocutory order to be immediately appealable under § 1292(a)(1), however, a litigant must show

consent decree in HSD's motion to dismiss as transforming it into an "express motion for injunctive relief"—particularly when HSD does not argue otherwise, and HSD *did* file a separate Rule 60(b) motion to "vacat[e]" the consent decree shortly after its motion to dismiss. Aplt. App. at 119, 127–34; *see also New Mexico* v. *Trujillo*, 813 F.3d 1308, 1319 (10th Cir. 2016) ("When determining whether an order expressly grants a request for an injunction, we consider the substance rather than the form of the motion and order."); *Kennecott*, 14 F.3d at 1496 (noting appellants "acknowledge that no express motion for injunctive relief is pending").

[7] The parties do not discuss *Carson*. *See Carson* v. *American Brands, Inc.*, 450 U.S. 79 (1981). We apply *Carson* because "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *United States* v. *Mobley*, 971 F.3d 1187, 1198 (10th Cir. 2020) (quoting *Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)).

more than [(1)] that the order has the practical effect of refusing an injunction." *Id.* at 84. A litigant must also show (2) that the order "might have a 'serious, perhaps irreparable, consequence,' and [(3)] that the order can be 'effectually challenged' only by immediate appeal." *Id.* (quoting *Balt. Contractors, Inc.* v. *Bodinger*, 348 U.S. 176, 181 (1955)); *see also Hutchinson*, 105 F.3d at 569 (applying the three-part *Carson* test).[8] As we have acknowledged, § 1292(a)(1) "should be narrowly construed" to vindicate "the 'long-established policy against piecemeal appeals.'" *Pimentel*, 477 F.3d at 1153 (quoting *Gardner* v. *Westinghouse Broad. Co.*, 437 U.S. 478, 480 (1978)).

---

[8] We also have articulated the *Carson* test as having two steps. *See DiTucci* v. *Bowser*, 985 F.3d 804, 809 (10th Cir. 2021) ("[T]o appeal under § 1292(a)(1) an interlocutory order not expressly denominated as an injunction, a party must show that the order (1) "threaten[s] a serious, perhaps irreparable, consequence," and (2) "[can] be effectually challenged only by immediate appeal." (internal quotation marks omitted)); *see also Miller* v. *Basic Rsch., LLC*, 750 F.3d 1173, 1176 (10th Cir. 2014) (similar); *Trujillo*, 813 F.3d at 1319 n.6 (similar). Under that formulation, we still conduct a threshold inquiry into whether the order on appeal has practical effects of injunctive relief. *See DiTucci*, 985 F.3d at 809–11 (applying *Carson* "assuming that the Order has earmarks of an injunction"); *Trujillo*, 813 F.3d at 1319 (stating *Carson* applies when "the court enters an order having the practical effect of granting or denying injunctive relief"); *Miller*, 750 F.3d at 1176–77 (stating *Carson* applies to "an order that has the practical effect of an injunction" and applying *Carson* "assuming that the order has the practical effect of an injunction"). Put differently, the threshold inquiry in the two-step test serves the same purpose as the first step of the three-step test. Ultimately, it does not matter whether we use a two-step or three-step *Carson* test here, because we find HSD fails to meet its burden on the two steps included in both articulations.

We have applied *Carson* to orders purportedly refusing to grant injunctions, *e.g.*, *Hutchinson*, 105 F.3d at 569, orders purportedly granting injunctions, *e.g.*, *DiTucci*, 985 F.3d at 810, and an order that could be understood as refusing to modify an injunction or refusing to grant an injunction, *United States* v. *Colorado*, 937 F.2d 505, 507–09 (10th Cir. 1991). We see no reason to treat an order purportedly refusing to dissolve an injunction differently, particularly because we invoked *Carson* when analyzing an order purportedly refusing to dissolve an injunction in *Hatten-Gonzalez I*, 579 F.3d at 1165 ("§ 1292(a)(1) will be available only in circumstances where an appeal will further the statutory purpose of permitting litigants to . . . challenge orders of serious, perhaps irreparable, consequence." (quoting *Carson*, 450 U.S. at 84)). *Hatten-Gonzalez I* did not more extensively discuss *Carson* only because the order on appeal there clearly failed *Carson* step one: it did not effectively refuse to dissolve an injunction. *Id.* at 1167. The same statutory provision grants jurisdiction over orders refusing to grant injunctions, orders granting injunctions, and orders refusing to dissolve injunctions, so it is unsurprising the same *Carson* test would apply to orders that purportedly have the effect of doing any of the three. *See* 28 U.S.C. § 1292(a)(1); *see also Salazar ex rel. Salazar* v. *District of Columbia*, 671 F.3d 1258, 1262 (D.C. Cir. 2012) (applying

14

*Carson* to order purportedly refusing to dissolve injunction); *Roberts* v. *St. Regis Paper Co.*, 653 F.2d 166, 170 (5th Cir. 1981) (same).

HSD argues appellate jurisdiction is proper under § 1292(a)(1) because "HSD's motion, if granted, would have dismissed the case and terminated the" consent decree. Reply Br. at 4. HSD distinguishes *Hatten-Gonzales I*, where the motion "would not have led to the dissolution of the" consent decree. Reply Br. at 4. For instance, here, unlike in *Hatten-Gonzales I*, the motion to dismiss "explicitly requested" that the district court dissolve the decree. Reply Br. at 4–5. HSD also observes "standing was not at issue in" *Hatten-Gonzalez I*. Reply Br. at 3. HSD does not explain that assertion. It may imply the consent decree would have become void if the district court granted the instant motion, because the district court would have lacked jurisdiction to order relief.

We need not address these arguments. HSD has failed to carry its burden to show that the order "might have a 'serious, perhaps irreparable, consequence,'" or "that the order can be 'effectually challenged' only by immediate appeal." *Carson,* 450 U.S. at 84 (quoting *Balt. Contractors*, 348 U.S. at 181). HSD has not even attempted to make this showing. *See PJ Utah*, 822 F.3d at 542 n.7 (noting the appellant "bears the burden to establish appellate jurisdiction"); *see also Hutchinson*, 105 F.3d at 570 ("Hutchinson has not even alleged that the district court's order may cause

15

serious or irreparable injury, nor could he in good faith."); *DiTucci*, 985 F.3d at 811 ("[E]ven assuming that the Order has earmarks of an injunction, . . . Mr. Bowser has failed to show that the Order threatened serious, perhaps irreparable, consequences."). We decline "to conjure up possible theories to invoke our legal authority to hear [this] appeal." *Raley* v. *Hyundai Motor Co, Ltd.*, 642 F.3d 1271, 1275 (10th Cir. 2011).

Nor are we ignoring any unbriefed but obvious basis in the record on which HSD could satisfy *Carson*. The district court suggested the timing of HSD's appeal "evinces a pattern of dilatory tactics." And HSD had the opportunity to appeal the district court's refusal to modify or dissolve the consent decree in response to HSD's Rule 60(b)(6) motion, but it chose not to do so. Under the circumstances here, we cannot say HSD has carried its burden to establish appellate jurisdiction.

16

## III

We lack appellate jurisdiction to review the order denying HSD's motion to dismiss. The appeal is DISMISSED.

Entered for the Court


Veronica S. Rossman
Circuit Judge

*Knowlton, et al v. Armijo, al*, No. 23-2143
**FEDERICO**, Circuit Judge, concurring

I am pleased to join in full the majority's opinion. I write separately to emphasize the importance of this litigation and to suggest that if New Mexico's Human Services Department (HSD) continues down the path of filing another frivolous appeal or pursuing an obstructionist legal strategy in the district court, a future panel of this court (and/or the district court) should consider taking additional steps – including sanctions, if appropriate – against HSD and its litigation counsel.

The history of this litigation is both frustrating and extraordinary. The district court has certified HSD's last two appeals as "frivolous." *Knowlton v. Armijo*, No. CV 88-0385 KG/GBW, 2023 WL 7114676, at *1 (D.N.M. Oct. 27, 2023). Including the dismissal of this appeal, this court has now dismissed four consecutive HSD appeals for lack of jurisdiction. *See, e.g.*, *Hatten-Gonzales v. Hyde*, 579 F.3d 1159, 1162–65 (10th Cir. 2009) (*Hatten-Gonzales I*); *Hatten-Gonzales v. Earnest*, 688 F. App'x 586, 588–89 (10th Cir. 2017) (unpublished) (*Hatten-Gonzalez II*); *Hatten-Gonzales v. Scrase*, No. 22-2115, 2023 WL 4881437, at *1 (10th Cir. Aug. 1, 2023) (per curiam and unpublished) (*Hatten-Gonzales III*).

After this appeal was filed, HSD filed a motion in the district court asking it to stay all proceedings pending our resolution of the appeal. The

district court not only denied that motion, but also certified HSD's appeal before us as "frivolous." *Knowlton*, 2023 WL 7114676, at *1. The district court's opinion shines a light on HSD's repeated attempts to evade and obstruct the annual case reviews needed to ensure HSD is delivering food assistance and medical benefits to vulnerable New Mexicans who rely on HSD for their very survival. *See id.* at *1–3.

## A

The district court provided several reasons why HSD's latest appeal was not only "frivolous," but also designed to obstruct and delay enforcement of the operative consent decree. *Id.* Because this is the *fourth* time we have dismissed an appeal by HSD, it is worth detailing each of these reasons.

## 1

The first reason offered by the district court for certifying the appeal as "frivolous" is HSD's failure to follow our repeated guidance on seeking dissolution of an injunction. *Id.* at *2. In fact, HSD's motion to dismiss the operative consent decree lacked any legal standard and did not cite 28 U.S.C. § 1292 or Federal Rule of Civil Procedure 60, which govern dissolutions of injunctions. It also made no effort to comply with our previous guidance in *Hatten-Gonzales I*, which provided specific instructions for HSD to follow if it again sought to dissolve an injunction. *Id.* at *2 ("Here, like *Hatten-Gonzales*, HSD's Motion to Dismiss 'did not seek to alter or eliminate any of the terms of

2

the [Modified Settlement Agreement], nor did it cite Rule 60(b)(5) or the standards from obtaining relief from an order.'" (quoting *Hatten-Gonzales I*, 579 F.3d at 1167) (alteration in original)).

**2**

The district court next emphasized that HSD lacked a good faith basis to argue that the 2020 amendment to the operative consent decree deprived the district court of subject matter jurisdiction. *Id.* at \*2 ("[I]t is not lost on this Court that HSD's argument that this Court lacks subject-matter jurisdiction relies on the Court granting HSD's Motion to Modify in 2020."). As the district court explained, it granted HSD's 2020 request to modify the operative consent decree only because "HSD argued for piecemeal dismissal of only specific sections and subsections of the Modified Settlement Agreement (MSA) relating to timeliness—acknowledging the MSA's remaining sections would remain effective." *Id.* And from the time the district court modified the MSA in 2020 until August 2022, "HSD was working toward compliance" and acting "with agreement that there would be a case review." *Id.* Then, "in an abrupt about-face, HSD argue[d] that no controversy exist[ed] given [the district court's] 2020 order modifying the MSA." *Id.* The district court, thus, concluded that "[s]uch a reversal further demonstrates HSD's dilatory tactics." *Id.*

**3**

Third, the district court explained:

3

> HSD is aware that the class scope has never been as narrow as it now contends. In fact, the class scope has been well-defined for decades. Each version of the settlement agreement explains that the class scope includes not only those who received untimely benefits but also those who applied for benefits and were erroneously denied. The Court finds HSD's effort to narrow the class scope—after decades of clarity—is just another delay tactic.

*Id*. (citation and footnote omitted).

HSD argues in this appeal that the 1989 class definition dictates how to interpret and enforce the operative consent decree in 2024. But a consent decree is not a class action settlement; instead, it is "a negotiated agreement that is entered as a judgment of the court." *Johnson v. Lodge #93*, 393 F.3d 1096, 1101 (10th Cir. 2004). Consent decrees are finalized and entered only "after careful negotiation has produced agreement on their precise terms." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). As a result, we interpret a consent decree "basically as a contract," which means that "the terms of the decree and the respective obligations of the parties must be found *within the four corners of the consent decree*." *Sinclair Oil Corp. v. Scherer*, 7 F.3d 191, 194 (10th Cir. 1993) (quoting *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238 (1975)) (emphasis added); *accord Armour & Co.*, 402 U.S. at 681–82 ("[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."). Thus, HSD may not stray outside the four corners of the operative consent decree in an effort to rewrite its scope, let alone seek to do so

4

by relying on a class definition from a 1989 class certification order predating the modern amendments to Federal Rule of Civil Procedure 23.

## 4

Fourth, and most troubling, the district court observed that the timing of HSD's last two appeals and motions to stay display that HSD is using litigation to try to dodge the annual case reviews required by the operative consent decree. *Knowlton*, 2023 WL 7114676, at *3. As the district court concluded, "[s]uch conspicuous timing evinces a pattern of dilatory tactics." *Id*.

## B

Any court should pause and consider carefully even the threat of sanctions against a litigant or its counsel. Imposing sanctions against litigants or their counsel is a serious step and one not to be taken lightly without good cause and notice and an opportunity to be heard. Both Congress and this Court have cautioned against imposing any sanction that would "dampen the legitimate zeal of an attorney in representing [their] client." *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc) (quoting H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S. Code Cong. & Ad. News 2716, 2781, 2782). Indeed, litigation often turns on unsettled or complex areas of the law, and litigants and attorneys are often required to construct novel or controversial arguments to advance or change the law.

However, against this backdrop and the history of this litigation, if HSD pursues yet again legal action that a court determines to be "frivolous," then sanctions against HSD and its litigation counsel should be strongly considered under Federal Rule of Civil Procedure 11, Federal Rule of Appellate Procedure 38, and 28 U.S.C. § 1927. *See, e.g.*, *Braley*, 832 F.2d at 1510 (discussing the federal courts' broad powers to impose sanctions on litigants and their counsel "[t]o deter frivolous and abusive litigation" and to "promote justice and judicial efficiency"); *see id.* at 1512 ("The power to assess costs, expenses, and attorney's fees against an attorney personally in the appropriate case is an essential tool to protect both litigants and the ability of the federal courts to decide cases expeditiously and fairly.").

In my view, this appeal lands beyond the outer limits of reasonable advocacy, and it reflects a pattern of recurring appeals used by HSD not to win on the merits, but to avoid and delay enforcement of the operative consent decree. As a state agency, HSD is a sophisticated litigant. According to its website, it pledges that its mission is to "ensure that New Mexicans attain their highest level of health by providing whole-person, cost-effective, accessible, and high-quality health care and safety-net service." *New Mexico Health Care Authority*, https://www.hca.nm.gov/ (last visited Oct. 25, 2024), [https://perma.cc/7KXB-83JZ].

6

HSD should honor its pledge, because HSD's failure to comply with the operative consent decree has the potential to devastate the lives of New Mexicans who depend on HSD to provide food assistance and medical benefits. HSD administers programs to the neediest New Mexicans – Medicaid, Supplemental Nutrition Assistance Program (SNAP), Temporary Assistance for Needy Families (TANF), Veterans Property Tax Exemptions, and others.

In its latest motion to stay filed before the district court, HSD argued that it would suffer irreparable harm if forced to comply with the operative consent decree. As the district court correctly explained, however, HSD following a consent decree (an injunction it agreed to after a settlement and negotiation) is not irreparable harm. *Knowlton*, 2023 WL 7114676, at *3–4. Rather, it is HSD's multi-decade failure to comply with federal law that might continue to inflict irreparable harm on New Mexico's most vulnerable citizens.

One more observation about this litigation. From the record, it is obvious that HSD is frustrated too. I take it as a given that HSD is staffed by people who care about its mission and the people it serves. My assumption is that HSD is frustrated by having to operate under court supervision, even though it agreed to do so as part of the settlement that created the consent decree. However, the road to relief from this frustration is not frivolous litigation but compliance.